## Williams v. Rees, Collector, and another.

*(Circuit Court, N. D. Illinois.*   ——, 1880.)

TAXATION — GAS COMPANIES — STATUTE OF ILLINOIS.—The legislature of the state of Illinois intended by the act of March 13, 1872, § 3, clause 4, as amended by the act of May 13, 1879, to except all manufacturing companies, except gas companies, from a capital stock tax.

SAME—SAME—CONSTITUTION OF ILLINOIS.—The legislature of the state of Illinois can constitutionally assess and tax the capital stock of gas companies, while it exempts the stock of purely manufacturing companies from such taxation.

*J. M. Jewell,* for complainant.

*J. K. Edsall,* for defendants.

BLODGETT, D. J.   Complainant, who is a citizen of the state of Pennsylvania, and a stockholder of the Chicago Gas-Light & Coke Company, brings this suit to enjoin the collection of the state, county and city taxes assessed upon the capital stock of the company for the year 1879.

By an act of the legislature of Illinois, approved February 12, 1849, entitled "An act to incorporate the Chicago Gas-Light & Coke Company," certain persons therein named, and their associates, were created a body politic and corporate, with perpetual succession, by the name and style of the "Chicago Gas-Light & Coke Company," with a capital stock of $50,000, which, by an amendment approved March 12, 1869, it was authorized to increase to $5,000,000, and with authority to manufacture and sell gas to be made from any or all substances, or a combination thereof, from which inflammable gas is usually made or obtained, and to be used for the purpose of lighting the city of Chicago, or the streets thereof, and any buildings therein, and to lay pipes for the purpose of conducting the gas in any of the streets or avenues of said city, with a further right, by the original charter and amendments, to purchase such an amount, in value and extent, of p operty and premises, in the city of Chicago, as may be necessary for its business, and to carry out the objects of its incorporation.

By an act of the general assembly of this state, approved

May 13, 1879, entitled "An act to amend sections 3 and 32 of an act entitled 'An act for the assessment of property, and for the levy and the collection of taxes,' approved March 30, 1872," it is provided:

"*Fourth.* The capital stock of all companies or associations now or hereafter created under the laws of this state (except those required to be assessed by the local assessors, as hereinafter provided) shall be so valued by the state board of equalization as to ascertain and determine, respectively, the fair cash value of such capital stock, including the franchise, over and above the assessed value of the tangible property of such company or association. Said board shall adopt such rules and principles for ascertaining the fair cash value of such capital stock as to it may seem equitable and just; and such rules and principles, when so adopted, if not inconsistent with this act, shall be as binding and of the same effect as if contained in this act, subject,—however, to such change, alteration, or amendment, as may be found, from time to time, to be necessary by said board: *Provided*, that in all cases where the tangible property or capital stock of any company or association is assessed under this act, the shares of capital stock of any such company or association shall not be assessed or taxed in this state. This clause shall not apply to the capital stock, or shares of capital stock, of banks organized under the general banking laws of this state: *Provided, further,* that companies and associations organized for purely manufacturing purposes, or for printing, or for publishing of newspapers, or for the improving and breeding of stock, shall be assessed by the local assessors in like manner as the property of individuals is required to be assessed.

"32. Banking, bridge, express, ferry, gravel road, gas, insurance, mining, plank road, savings bank, stage, steamboat, street railroad, transportation, turnpike, and all other companies and associations incorporated under the laws of this state, (other than banks organized under the general banking laws of this state, and the corporations required to be assessed by the local assessors, as hereinbefore provided ) shall, in

addition to the other property required by this act to be listed, make out and deliver to the assessor a sworn statement of the amount of its capital stock, setting forth particularly—

"*First.* The name and location of the company or association.

"*Second.* The amount of capital stock authorized, and the number of shares into which such capital stock is divided.

"*Third.* The amount of capital stock paid up.

"*Fourth.* The market value, or, if no market value then the actual value, of the shares of stock.

"*Fifth.* The total amount of all indebtedness, except the indebtedness for current expenses, excluding from such expenses the amount paid for the purchase or improvement of property.

"*Sixth.* The assessed valuation of all its tangible property.

"Such schedule shall be made in conformity to such instructions and forms as may be prescribed by the auditor of public accounts. In all cases of failure or refusal of any person, officer, company, or association, to make such return or statement, it shall be the duty of the assessor to make such return or statement from the best information which he can obtain."

It is charged in this bill that the defendant corporation is organized for "purely manufacturing purposes," within the intent and meaning of the fourth clause of section 3 as the same now stands, amended by the act of May 13, 1879, because it is alleged that its sole business is manufacturing and selling of gas and coke, and the other products of the business of making gas, and that as such manufacturing corporation its capital stock is not taxable. It is further alleged that the assessor for the town of South Chicago, within which the principal office of the company is situated, assessed the property of said company for the year 1879 at a valuation of $75,000, which was increased by the board of equalization of the state to $90,000, which valuation, complainant charges, represented the entire property of the company liable to taxation, and that the state, county and city taxes, for the year 1879, on the said sum, amount to $4,300.20, which

complainant avers is all the taxes which the company is liable to pay. But complainant charges that, in addition to said assessment, and the tax extended against the same, the board of equalization of this state, at its meeting in 1879, valued and assessed the capital stock of said company at $150,000; that the auditor of state certified the said assessment, under direction of said board, to the clerk of said Cook county, for the purposes of taxation, and that the county clerk extended a capital-stock tax upon the assessment rolls against said company, according to the percentage required, for state, county and other municipal purposes, amounting to the sum of $7,167, in addition to the tax upon the property of the company extended against the valuation by the town assessor, and that a warrant for the collection of said property and capital-stock tax has been duly issued, and is in the hands of defendant Rees, collector for the town of South Chicago, for collection; that the company has paid the taxes extended against the valuation of its property made by the town assessor, and will pay the capital-stock tax so assessed, and in the hands of the collector, unless restrained by the order of this court; and because the said capital-stock tax is wholly unauthorized and illegal, the complainant prays for an injunction restraining the collection of the said tax by the assessor, or the payment by the said corporation.

It is admitted, for the purposes of this case, that the company had, in the year 1879, laid down in the streets and alleys of the city of Chicago 184 miles of main or pipes for the purpose of conveying gas to its consummers.

To this bill the defendant Rees has demurred, and the right of complainant in the case made by the bill to the relief asked for has been ably argued by the solicitors for the complainant and the defendant.

The decision of the case seems to me to be involved in the answer to two questions which naturally arise upon the statute under which this tax was assessed: *First.* Did the legislature of this state intend that the capital stock of gas companies should be assessed or valued, for the purposes of taxation by the state board of equalization? *Second.* Can the

legislature constitutionally assess and tax the capital stock of gas companies, while it exempts the stock of purely manufacturing companies from taxation?

By the original act "for the assessment of property, and for the levy and collection of taxes," approved March 13, 1872, it is provided, in section 3, clause 4, as follows: "The capital stock of all companies and associations now or hereafter created, under the laws of this state, shall be so valued by the state board of equalization as to ascertain and determine, respectively, the fair cash value of such capital stock, including the franchise, over and above the assessed value of the tangible property of such company or association;" and by the thirty-second section of the same act certain enumerated classes of corporations incorporated under the laws of this state, among which are gas companies, are required to make out and deliver to the assessor a sworn statement of the amount of their capital stock, which was to be forwarded to the auditor, and by him laid before the board of equalization for valuation and assessment.

The amendment of May 13, 1879, to the fourth clause of section 3 simply inserts in brackets, immediately after the words "the laws of this state," in the second line of the clause as printed in the Revised Statutes, ("except those required to be assessed by the local assessors hereinafter provided,") and adds to that clause the following proviso: "*Provided, further,* that companies and associations organized for purely manufacturing purposes, or for printing, or for publishing of newspapers, or for the improving and breeding of stock, shall be assessed by the local assessors in like manner as the property of individuals is required to be assessed."

While the amendment to the thirty-second section of the same acts consists in omitting the word "manufacturing," as descriptive of one of the classes of corporations who are required to make out and deliver to the assessor a sworn statement of the amount of their capital stock, to be laid before the board of equalization, and the insertion of the words "and the corporations required to be assessed by the local assessors, as hereinbefore provided," after the word "state,"

in the fifth line of that section, as printed in the Revised Statutes, while gas companies are still described as one of the classes of corporations whose capital stock is to be valued and assessed by the board of equalization. I think it clear, therefore, from the manner in which the amendment is made, that the legislative intention was to require gas companies to make returns of their capital stock for assessment by the board of equalization. In other words, the legislature did not intend to include gas companies in the class of corporations "organized for purely manufacturing purposes," whose "property shall be assessed by the local assessors in like manner as the property of individuals is required to be assessed."

I have no doubt the purpose of the legislature was to except manufacturing companies, other than gas companies, from a capital-stock tax, and to continue to impose a capital-stock tax on gas companies; and this brings me to consider the second proposition—the constitutionality of the law under consideration.

Section 1, art. 9, of the constitution of this state is as follows:

"Section 1. The general assembly shall provide such revenue as may be needful, by levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property, such value to be ascertained by some person or persons; to be elected or appointed in such manner as the general assembly shall direct, and not otherwise; but the general assembly shall have the power to tax peddlers, auctioneers, brokers, hawkers, merchants, commission merchants, showmen, jugglers, innkeepers, grocery keepers, liquor dealers, toll-bridges, ferries, insurance, telegraph and express interests or business, vendors of patents, and persons or corporations owning or using franchises and privileges, in such manner as it shall, from time to time, direct by general law, uniform as to the class upon which it operates."

It will be seen that the legislature is clothed with full power, to be exercised in its discretion, as to the manner in which persons or corporations owning or using franchises

shall be taxed, the only limitation upon that discretion being that the tax shall be imposed by a general law, and be uniform as to the class upon which it operates.

In the case of *The State Railroad Tax Cases,* 2 Otto, 575, the supreme court of the United States says, at page 611: "As to section 1 we need not inquire very closely whether the mode adopted by the statutes, and the rules of the board of equalization, produces a valuation for railroad companies different from that of individuals, though, as we have already said, it does not appear to us to produce any inequality to the prejudice of the companies. But we need not pursue that inquiry very closely, because the latter part of the section, in express terms, authorizes the legislature to 'tax persons and corporations owning or using franchises in such manner as it shall from time to time direct, by general law;' and the only restriction on the power, as applied to this class, is that it shall be 'uniform as to the class upon which it operates.'

"There can be no doubt that all the classes named in this clause, including peddlers, showmen, innkeepers, ferries, express, insurance and telegraph companies, are taken out of the general rule of uniformity prescribed by the first clause, and the only limitation as to them is that of uniformity as to the class upon which the law shall operate; that is, innkeepers may be taxed by one, ferries by another, railroads by another, provided that the rule as to innkeepers be uniform as to all innkeepers, the rule as to ferries be uniform as to all ferries, and the rule as to railroad companies be uniform as to all railroad companies."

At page 602 it says: "It is obvious that, while a fair assessment under these two descriptions of property (real estate and track) will include all the visible or tangible property of the corporation, it may or may not include all its wealth—there may be other property of a class not visible or tangible which ought to respond to taxation, and which the state has the right to subject to taxation.  *  *  *  This element the state of Illinois calls the value of the franchise and capital stock of the corporation—the value of the right to use this tangible property in a special manner, for the purpose

of gain. This constitutes the third valuation, which is likewise to be made by the board of equalization; and, when thus ascertained, is subjected to the taxation of the state, counties, towns and cities, by the same rule that the value of the road-bed is—namely, according to the length of the track in each taxing locality."

So, too, in *Society for Savings* v. *Coite*, 6 Wall. 607, the same court says: "Nothing can be more certain in legal decisions than that the privileges and franchises of a private corporation, and all trade and avocations by which the citizens acquire a livelihood, may be taxed by a state for the support of a state government."

The same painciple is asserted in *Porter* v. *R. R. I. & St. L. R. Co.* 76 Ill. 561: "That. every corporation possesses a franchise of some value can admit of no doubt. Even where it is created for the purpose of pursuing a business that may be lawfully pursued by any individual in the state, the privilege of the combination of capital by many persons, with the capacity to hold and manage it under one direction, in perpetual succession, like a single individual, free from competition among those interested, and from change or disturbance by the changes of individual life, and without incurring any personal hazard or responsibility, or exposing any other property than what belongs to the corporation in its legal capacity, must necessarily have a value beyond and distinct from the mere value of the money or property which the corporation is created to hold and use in its business.

"But it is again insisted that, even conceding that it is competent for the legislature to provide that the franchise shall be taxed, its value should be determined by itself, as that of other property is determined, and not in connection with the value of other property, in the manner required by the act.

"It surely cannot be doubted that the requirement that the board of equalization shall ascertain and determine the fair cash value of the capital stock, including the franchise, of all companies and associations now or hereafter created under the laws of this state, over and above the assessed value of the tan-

gible property of such company or association, is a general law, or that it is uniform as to the class upon which it operates. It is not restricted to any particular part of the state, nor is it limited to a special tax. It extends to the entire state, for the purpose of general taxation, and it applies the same rule to all within the class upon which it operates—namely, the corporations now or hereafter created under the laws of this state. It is not required, as seems to be thought by some of the counsel with whose arguments we have been favored, that the legislature shall, in providing for the taxation of corporations, under the last clause of the section referred to, designate the precise amount which the corporation shall pay, and that this shall be the same on each corporation, without regard to the value of the franchise or privileges enjoyed, nor that such taxation shall be of like character with that which may be imposed on innkepers and others pursuing the particular vocations named. It is only required that they shall be taxed in such manner as the general assembly shall, from time to time, direct by general law, and the only uniformity required is as to the class upon which such general law shall operate. It is, therefore, left entirely to the legislature to determine whether corporations shall be taxed only on their tangible property, on the amount of their capital paid in, on the amount of their gross receipts, or, as in the present instance, on the value of their tangible property, and on the fair cash value of their capital stock, including their franchises, over and above the assessed value of their tangible property, subject merely to the limitation that it shall be directed by general law, uniform as to the class upon which it operates."

And the rule fairly deducible from these cases, I think, is that the power of the legislature is not only plenary as to the manner in which the property and franchises of corporations created by the state shall be taxed, but it can also classify such corporations for the purpose of taxation—that is, it can provide a mode of fixing the value of the franchises or capital stock of railroad corporations, another for mining corporations, and another for manufacturing companies; and I

see no reason why it cannot, within certain limits, make different classes of manufacturing companies, and provide different rules for assessing the value of their capital and franchises.

Applying these views to the case before court, it seems to me wholly within the province of the legislature to say whether gas companies shall be classed with other manufacturing companies for the purposes of taxation, or whether they shall form a distinct class by themselves.

One cogent reason suggests itself why they should be classified separately from companies engaged exclusively in manufacturing: They usually, if not always, exercise not only the franchise of being a corporation, but also the right to use the public streets and highways for the purpose of conveying the gas made by them to their consummers.

In the case of this defendant company, it has, by its charter, the vested right to lay its pipes in all the streets and avenues of this city—a franchise presumably of great value, and differing essentially from the franchise of a mere manufacturing company; and, as a general rule, this class of corporations always uses the streets, alleys and highways of the cities and towns in which they carry on their business for the purpose of laying their pipes therein; and, indeed, this privilege, whether derived from the legislature, as in the case with this company, or from the city or town authorities, is almost a necessary incident to the successful practical operation of a gas company, as it is doubtful if any of them could be profitably worked if compelled to obtain the right to lay their pipes solely on private property. From the very nature of their business they must depend upon and enjoy an easement in the public streets, such as is not enjoyed by other manufacturers.

And if the legislature deems this or any other distinction between the business of gas companies and other manufacturing companies sufficient to justify a different mode of taxation, the courts cannot interfere.

For these reasons the injunction is denied. The demurrer to the bill is sustained, and the bill discharged for want of equity.