# IN RE TAXES, PACIFIC REFINERS, LIMITED.

## NO. 3057.

Argued February 19, 1957.   Decided March 29, 1957.

Rice, C. J., Stainback and Marumoto, JJ.

OPINION OF THE COURT BY MARUMOTO, J.

This is an appeal by the tax commissioner of the Territory of Hawaii, hereinafter referred to as the commissioner, from the decision of the tax appeal court in

favor of Pacific Refiners, Limited, hereinafter referred to as the taxpayer. The question at issue is the tax rate or rates to be applied under the general excise tax law to certain sales made in January and February 1953 by the taxpayer to Honolulu Gas Company, Limited, hereinafter referred to as the gas company.

During the period in question, the taxpayer was engaged in the business of processing and refining oil and selling the resulting products to its customers. These products included oil and gas. It was also engaged in the business of purchasing oil and reselling it to its customers without processing or refining. It held a license issued under the general excise tax law.

Also during the period in question, the gas company was a public utility as defined in section 4701 of the Revised Laws of Hawaii 1945. In addition to doing business as a public utility, it was engaged in business activity other than as a public utility. As a public utility, it was subject to the public utility tax under chapter 106, which is a tax imposed in lieu of all taxes other than income taxes, certain specific taxes and fees, and any tax imposed by the terms of its franchise. With respect to its business other than as a public utility, it was subject to the general excise tax law and held a license thereunder.

The general excise tax law, as set forth in chapter 101 and comprising sections 5441 to 5482 of the Revised Laws of Hawaii 1945, imposes a tax for the privilege of engaging in certain business activities, including manufacturing and the selling of tangible personal property. The tax is measured by the gross income derived from the activity that a taxpayer is engaged in. But different rates are applied to different activities. Under section 5451, all persons who have gross income upon which the tax is imposed are required to obtain licenses to engage in the activities from which such gross income is derived. Section

5459 specifically exempts public utilities from the tax with respect to their public utility business.

This case involves three categories of sales. These categories, amounts of sales involved, tax rates applied and amounts of tax reported by the taxpayer, and rates applied and amounts assessed by the commissioner, were as follows:

*Category 1. Sales of oil without processing or refining by taxpayer*

| Amounts of sales | Rate | As reported by taxpayer Amounts of tax | Rate | As assessed by commissioner Amounts of tax |
|---|---|---|---|---|
| $ 100,812.14 | 1% | $ 1,008.12 | 2½% | $ 2,520.30 |

*Category 2. Sales of oil processed or refined by taxpayer*

| $ 78,768.81 | 1½% | $ 1,181.53 | 2½% | $ 1,969.22 |

*Category 3. Sales of gas manufactured by taxpayer*

| $ 23,320.71 | 1½% | $ 349.81 | 2½% | $ 583.02 |

| | |
|---|---|
| Tax assessed by the commissioner | $ 5,072.54 |
| Tax reported by the taxpayer | 2,539.46 |
| Amount of tax in dispute | $ 2,533.08 |

The tax appeal court held:

(1) That as to category 1, the taxpayer sold the oil, without processing or refining by it, to the gas company for use in the production of gas which the latter sold in its public utility business through its gas mains in Honolulu and such sales were sales by a wholesaler to a licensed manufacturer to which the rate of one per cent applied.

(2) That as to category 2, the taxpayer sold the oil, after processing and refining it, to the gas company for use in the production of gas which the latter sold in its public utility business through its gas mains in Honolulu

and such sales were sales by a manufacturer to a manufacturer to which the rate of one and one-half per cent applied.

(3) That as to category 3, the taxpayer sold the gas manufactured by it to the gas company in containers for use by the latter in its public utility system in Hilo, with the gas company making virtually no change in the product, and such sales were sales by a manufacturer to a licensed retailer to which the rate of one and one-half per cent applied.

The tax appeal court thereby sustained the position of the taxpayer as to all categories. It is the contention of the commissioner that the rate of two and one-half per cent applicable to every person engaging in the business of selling tangible personal property, other than as a wholesaler or producer, should apply with respect to all categories. However, he interposes no objection to taxing $9,342.38 of category 1 sales at the wholesaler's rate of one per cent and taxing $7,299.24 of category 2 sales at the manufacturer's rate of one and one-half per cent. The reason for this concession is that there is evidence in the record that out of the total sales of $179,580.95 in categories 1 and 2, $16,641.62 represented sales of oil from which the gas company derived products which were resold in its non-utility business. The record is devoid of any direct evidence as to what portion of $16,641.62 represented sales by the taxpayer of oil before processing by it and what portion represented sales of oil processed by it. The figures $9,342.38 and $7,299.24 have been derived by allocating $16,641.62 to the two categories on the basis of the total amounts of sales in such categories. Such allocation is supported by the testimony that the oil in both categories was about the same when received by the gas company, whether it was sold by the taxpayer without processing by it or after being first processed by it. By

deducting the amounts taken out of controversy by such concession, there remains in dispute the proper rate or rates to be applied to sales of $91,469.76 in category 1, $71,469.57 in category 2 and $23,320.71 in category 3.

We sustain the contention of the commissioner. We hold that the amounts involved in all categories, after the deduction mentioned above, represent sales made by a person engaged in the business of selling tangible personal property to which the rate of two and one-half per cent applies.

As to category 1, the taxpayer did not sell as a manufacturer, for it did not process or refine the oil that was sold. The taxpayer made the sales as a person engaged in the business of selling tangible personal property. Under paragraph (1) of section 5455B, the rate applicable to every person engaging in such business is two and one-half per cent, unless he is a wholesaler or a producer. The rate applicable to a wholesaler is one per cent. The rate applicable to a producer is one and one-half per cent. The taxpayer did not come within the definition of a producer in section 5447. So, the question is whether the taxpayer was a wholesaler. Under section 5446, a wholesaler is a person doing a regularly organized wholesale or jobbing business, known to the trade as such, and he is recognized as a wholesaler only with respect to sales made to a licensed retail merchant, a licensed manufacturer or a licensed contractor. The taxpayer was doing a regularly organized wholesale business. No contention is made that the gas company was either a licensed retail merchant or a licensed contractor. So, the question narrows down to whether it was a licensed manufacturer. In the determination of this question, we confine our inquiry to whether the gas company was licensed, although there is also a question as to whether it was a manufacturer. For, even if we assume that it was a manufacturer, if we reach the conclusion that

it was not licensed, then it would not be a licensed manufacturer. The gas company did not have a license under the general excise tax law with respect to its public utility business. It is conceded that the fact that the gas company held a license under the general excise tax law with respect to its non-utility business is immaterial to this case because this case is concerned only with sales to it with respect to its public utility business. The case of *Brodhead* v. *Borthwick,* 37 Haw. 314, aff'd 174 F. (2d) 21, cert. denied 338 U. S. 847, definitely decided that the word "licensed" as used in the general excise tax law means licensed under such law. Thus, the gas company was not licensed and sales to it were not sales to a licensed manufacturer. *Brodhead* v. *Borthwick* is a decision of this court which is directly in point on a matter of statutory construction. In affirming the decision, the United States Court of Appeals of the Ninth Circuit, after stating that the construction placed by this court on a statute of Hawaii, unless manifestly erroneous, must be accepted as correct, held as follows: "Finally, the construction placed upon such Hawaiian tax statute by the majority opinion of the Hawaiian Supreme Court certainly is not manifestly erroneous. Consequently such construction must be and is accepted by us as correct." (*Brodhead* v. *Borthwick,* 174 F. [2d] 21, 24)

*Brodhead* v. *Borthwick* involved sales of merchandise by a regularly organized wholesaler to army post exchanges and navy ships' services for the purpose of resale. Army post exchanges and navy ships' services were Federal instrumentalities which were not subject to the general excise tax law. For that reason, they were not required to be licensed and did not have any license under such law. Under such circumstances, this court held that they were not licensed retail merchants although they exercised retail functions. In so holding, this court stated, at page

320: "In our opinion the word 'licensed' included in the definition of sales in section 1, paragraph (10) (a) [R. L. H. 1945, § 5446], was used by the legislature advisedly. It must be assumed that it was advised of the immunity from taxation of federal instrumentalities. It extended exemptions by the Act itself to certain business activities exercising retail functions, *viz.,* hospitals, infirmaries and sanatoria. It no doubt had in mind other business activities which, though retailers in a popular sense, nevertheless legally were not retailers under the terms of the Act. In each of the instances referred to no license is required *under the provisions of section 21 of the Act* [R. L. H. 1945, § 5451]. From all this it is abundantly clear that by the use of the word 'licensed' the legislature intended to exclude from the definition of 'wholesaler' sales made to persons exercising retail functions who *under the provisions of the Act* were not required to be licensed." (Emphasis supplied) This language of the court is subject to no other interpretation than that the word "licensed" as used in the general excise tax law means licensed thereunder. Such was the understanding of the court of appeals when it stated, in affirming the decision: "We are in accord with the majority decision below that 'licensed' means licensed under the Act and that therefore as to sales by appellant to army post exchanges and naval ships' service stores appellant was not a wholesaler as defined by the Act." (*Brodhead* v. *Borthwick,* 174 F. [2d] 21, 23)

The taxpayer, however, argues that *Brodhead* v. *Borthwick* stands only for the proposition that sales of personal property are to be taxed twice and that a sale is taxable at the lower rate if subsequent taxable activity follows. This argument is based on the statement of this court at page 322 that "The exception of 'wholesalers' as a class from 'every person' as a class affects a natural and reasonable classification of vendors especially where, as here, it

synchronizes with the evident intent of the legislature, speaking generally, that sales of tangible personal property in their normal distribution through commercial channels bear two taxes, *viz.*, one when sold at wholesale when the rate is one quarter of one per cent and one when sold at retail when the rate is one and one-half per cent," and the following statement of the court of appeals at page 24: "In other words the court below has held that Hawaii may, in an excise tax act which taxes every sale, service or other activity, properly avoid the doubling of the tax or its undue pyramiding by prescribing a lower rate where a subsequent taxable activity is to follow. We deem such to be reasonable." These statements are *dicta* and do not embody the holding of this court and the court of appeals, because *Brodhead* v. *Borthwick* did not involve a situation where one taxable sales activity was followed by another taxable sales activity. There was only one taxable sales activity in that case. In regard to sales to retailers where resales by the retailers are nontaxable by reason of immunity, exemption or otherwise, this court stated at page 323: "They are readily distinguishable from sales to a 'licensed retail merchant.' And the legislature apparently intended that as to each class a different rate of taxation obtain, in the former the rate of one and one-half per cent as sales made by 'every person' and in the latter one-quarter per cent as sales made by a 'wholesaler.'" The court of appeals elaborated the statement of this court as follows: "In substance, the classification of taxpayers for rate purposes under the Act, pursuant to the construction of the Supreme Court of Hawaii, is as follows: Class 1 — (in which appellant falls) 'every person' making sales concerning which there will not be a further tax, either because the sale is one for consumption or one for a resale but on which resale there is, under the Act, no tax liability. Class 2 — 'wholesalers' as defined

by the Act making sales for resale where the resales later would be taxed at 1½%. As to Class 1 the tax rate is fixed at 1½%. In Class 2 the original sale is subject to ¼% tax and the subsequent resale to 1½% tax, or a total for the original and subsequent sale with respect to Class 2 of 1¾%." The court of appeals further stated as to class 1: "In Class 1 above-mentioned under the decision of the court below the sale by 'every person' to the federal government, the territorial government, any agency of either, charitable institutions, hospitals, etc., as previously mentioned are to be taxed at 1½% because each of such buyers, whether buying for consumption or resale are immune from a second tax." Note that the immunity from the second tax that justifies the higher rate is immunity "under the Act." That is, the further tax that has been taken into consideration to avoid undue pyramiding is the tax under the general excise tax law, not a tax under some other law. Thus, the proposition established by *Brodhead* v. *Borthwick* is not as argued by the taxpayer but is as set forth in the foregoing statements of this court and the court of appeals, namely, that where a person sells tangible personal property for the purpose of resale and there is, under the general excise tax law, no tax on resale because of immunity, exemption or otherwise of the person making the resale, the rate applicable to the original seller is the higher rate imposed on "every person" and not the lower wholesaler's rate.

The taxpayer counters such proposition by asserting that the gas company paid the public utility tax which is measured by its gross income from its public utility business, that such tax is in lieu of all other taxes and is equivalent to the general excise tax, that it thus in effect paid the further tax on resale and should be considered as "licensed" as that word is used in the general excise tax law. The commissioner answers such assertion by arguing

vigorously and at length that the public utility tax is in the nature of a property tax and differs substantially from the general excise tax and that in construing the general excise tax law only the pyramiding effect of the economic burden under such law may be considered, not the pyramiding effect of the public utility tax. We deem it unnecessary to consider the argument of the commissioner because we think that there is a conclusive answer to the taxpayer's assertion. Our answer is that there is nothing in the general excise tax law which provides that the public utility tax shall be considered as equivalent to the general excise tax or which provides that a public utility which pays the public utility tax shall be considered as licensed under the general excise tax law. What the taxpayer does by its assertion is no more, no less, than to restate the position which was taken by the dissenting justice of this court in *Brodhead* v. *Borthwick, supra,* who stated at page 349: "The employment by the legislature of the adjective 'licensed' in modifying the purchasing 'retail merchant' in order to make applicable the lower rate to the case of a wholesaler is susceptible to a more reasonable and less narrow construction and which is not confined wholly to the strict statutory sense of the adjective in securing a license under the Act. It is that the purchaser must be a retail merchant who is lawfully permitted by proper authority to carry on a retail business within the Territory which without such permission would be illegal." The majority of this court rejected the position of the dissenting justice and the court of appeals sustained the majority. It is to be noted that the dissenting justice did not dispute that the construction placed on the word "licensed" by the majority accorded with the "strict statutory sense of the adjective."

We are not at liberty to go beyond the plain meaning of the word used by the legislature merely because of our

conjecture that the legislature might have intended that the word have a broader meaning. (*In re Inter-Island Steam Nav. Co.,* 21 Haw. 6; *Kauai* v. *McGonagle,* 33 Haw. 915; *Territory* v. *Merseberg,* 35 Haw. 248) In *Territory* v. *Merseberg, supra,* at page 251, this court stated that there is no *cy pres* doctrine in the construction of statutes and quoted the following rule set forth by Vattel: "It is not allowable to interpret what has no need of interpretation. When the meaning of a law is evident, to go elsewhere in search of conjecture in order to restrict or extend the act, would be an attempt to elude it, a method which, if once admitted, would be exceedingly dangerous for there would be no law, however definite and precise in its language, which might not by interpretation be rendered useless."

The legislature in enacting the general excise tax law was not entirely unaware that inequalities and situations which they failed to foresee might be found in the administration of such law. The senate committee on ways and means of the Eighteenth Legislature reported: "It is recognized that in this, as in the case of all measures which have a broad scope, inequalities are inevitable, nor can every conceivable situation be properly provided for." (Senate Journal 1935, page 422) If there is any inequality or any situation that was overlooked in the law, it is up to the legislature to make the correction. For this court to do so under the guise of statutory construction is to indulge in judicial legislation which we are prohibited from doing under the doctrine of separation of powers. The following statement of Mr. Justice Brandeis in *Ebert* v. *Poston,* 266 U. S. 549, at page 554, in a case involving the construction of the Federal Soldiers' and Sailors' Civil Relief Act of March 8, 1918 (40 Stat. 440), is particularly appropriate to the instant case: "The judicial function to be exercised in construing a statute is limited to ascertaining the intention of the legislature therein expressed. A *casus omissus*

does not justify judicial legislation. Compare *United States* v. *Weitzel,* 246 U. S. 533, 543. This Act is so carefully drawn as to leave little room for conjecture. It deals with a single subject and does so comprehensively, systematically, and in detail. There are in the Act an aggregate of 36 sections and 27 subsections. To ensure certainty, separate provision is made for each of the several classes of transactions to be dealt with and for the situations likely to arise in each. * * * Such care and particularity in treatment preclude expansion of the Act in order to include transactions supposed to be within its spirit, but which do not fall within any of its provisions." The same may be said of the general excise tax law.

As to category 2, the taxpayer was a manufacturer in fact because it processed and refined the oil before selling it, but it was not taxable as such under the general excise tax law. Under paragraph (1) of section 5455A, manufacturers, who are taxed as such under the general excise tax law, consist of millers and processors of sugar, canneries, and all manufacturers on whose gross income a tax is not otherwise levied under such law. The rate applicable to millers and processors of sugar and canneries is two and one-half per cent. The rate applicable to all manufacturers on whose gross income a tax is not otherwise levied under the general excise tax law is one and one-half per cent.

A manufacturer, in addition to being such, is a seller of tangible personal property with respect to the sales of his products. The language of paragraph (1) of section 5455B, concerning the imposition of the tax on sellers of tangible personal property, is broad enough to cover the sales by a manufacturer of his products.

Thus, the taxpayer, with respect to the sales of oil in category 2 to the gas company, was subject to the payment of the tax as a seller of tangible personal property, unless there is some provision in the general excise tax law to

exempt it from such tax. If it was so liable, the rate applicable to it would be the higher rate of two and one-half per cent imposed on "every person," not the lower rates imposed on wholesalers and producers. The wholesaler's rate would not be applicable because such sales were not made to licensed purchasers as required under section 5446. The producer's rate would not be applicable because the taxpayer was not a producer as defined in section 5447.

There are two paragraphs, namely, paragraphs (4) and (5), in section 5455B which relate to the applicability of the tax on selling to the sales by a manufacturer. Paragraph (4) provides that a manufacturer engaged in the business of selling his products at retail shall pay the tax on selling at the retailer's rate and the value of the products sold by him at retail shall be deducted from the gross income used in measuring his tax as a manufacturer. Paragraph (5) provides that a manufacturer engaging in the business of selling his products to manufacturers, wholesalers, or licensed retailers shall not be required to pay the tax imposed for the privilege of selling such products at wholesale or for the privilege of selling such products for delivery outside of this Territory, and that the gross income from his sales to manufacturers, wholesalers, or licensed retailers and from his sales for delivery outside of this Territory shall be included in the gross income used in measuring his tax as a manufacturer.

We think that paragraphs (4) and (5) are included in section 5455B for the purpose of preventing the imposition of a double tax on manufacturers who sell their products, that is, one on manufacturing and one on selling. That is the only basis on which their inclusion in section 5455B can be explained logically. We construe the word "manufacturer," as used in paragraphs (4) and (5), to include not only a manufacturer on whose gross income a tax is not otherwise levied under the general excise tax law

but also any miller or processor of sugar or any cannery. In the case of a manufacturer other than millers or processors of sugar and canneries, double taxation is prevented by the qualifying phrase "on whose gross income a tax is not otherwise levied." In the case of millers or processors of sugar and canneries, no such qualifying phrase is used and only the existence of paragraphs (4) and (5) prevents double taxation. Thus, if a miller or processor of sugar or a cannery sells its products at retail, in the absence of paragraph (4), a strict application of paragraph (1) of section 5455A and paragraph (1) of section 5455B will result in the imposition of the tax on manufacturing at the rate of two and one-half per cent and another tax on selling at the rate of two and one-half per cent. But paragraph (4) prevents the imposition of the tax on manufacturing by providing that the value of the products sold at retail shall be deducted from the gross income used in measuring his tax on manufacturing as such. A manufacturer, other than a miller or processor of sugar or a cannery, who sells his products at retail is a seller and not taxed as a manufacturer because a tax is otherwise levied on him as a seller and he does not fall within the class of "all other manufacturers on whose gross income a tax is not otherwise levied" under the general excise tax law.

As to paragraph (5), here again, if a miller or processor of sugar or a cannery sells its products to manufacturers, wholesalers, or licensed retailers, or for delivery outside of this Territory, a strict application of paragraph (1) of section 5455A and paragraph (1) of section 5455B will result in the imposition of the tax on manufacturing at the rate of two and one-half per cent and another tax on selling at the rate of one per cent in the case of sales to licensed purchasers and at the rate of two and one-half per cent in the case of sales to unlicensed purchasers.

Paragraph (5) prevents the imposition of the tax on selling with respect to that portion of the sales of such miller or processor of sugar or cannery which are wholesale sales by providing that such manufacturer shall not be required to pay the tax imposed for the privilege of selling at wholesale. With respect to the remainder of the sales of such manufacturer, which are not wholesale sales, paragraph (5) prevents the imposition of the tax on selling on a portion of such remainder which are sales for delivery outside of this Territory. This leaves, in the case of a miller or processor of sugar or a cannery, only its nonretail sales to unlicensed persons in this Territory subject to double taxation. We need not conjecture whether the failure to exempt such sales from the tax on selling was due to design or to inadvertence. In either case, in the words of Mr. Justice Brandeis, a *"casus omissus* does not justify judicial legislation."

A manufacturer, other than a miller or processor of sugar or a cannery, who sells to manufacturers, wholesalers or licensed retailers, falls within the class of manufacturers on whose gross income a tax is not otherwise levied under the general excise tax law with respect to his wholesale sales and his sales for delivery outside of this Territory because paragraph (5) exempts such manufacturer from the payment of the tax for the privilege of selling at wholesale and for the privilege of selling for delivery outside of this Territory. But with respect to its other sales, that is, sales to unlicensed purchasers and not for delivery outside of this Territory, he does not fall within such class of manufacturers, but is a seller, because paragraph (5) does not exempt such other sales from the tax on selling.

The specific language of paragraph (5) which exempts a manufacturer who sells at wholesale from the tax on selling is that "a manufacturer or producer engaging in

the business of selling his products to manufacturers, wholesalers, or licensed retailers, shall not be required to pay the tax imposed in this chapter for the privilege of selling such products at wholesale." In the quoted language the word "licensed" is not used to qualify manufacturers and wholesalers although it is used to qualify retailers. From this fact the taxpayer attempts to draw an inference that paragraph (5) exempts a manufacturer who sells to unlicensed manufacturers from the tax on selling and subjects him only to the tax on manufacturers. No such inference can be drawn.

The exemptions from the tax on selling which are provided in paragraph (5) relate to specified classes of sales, namely, wholesale sales and sales for delivery outside of this Territory, made by a specified class of manufacturers, namely, manufacturers engaging in the business of selling their products to manufacturers, wholesalers, or licensed retailers. Thus, the adjectival phrase "engaging in the business of selling his products to manufacturers, wholesalers, or licensed retailers" specifies the class of manufacturers who may be exempt, provided their transactions also fall within the classes of exempt transactions. A manufacturer who sells to unlicensed manufacturers or unlicensed wholesalers falls into the exempt class of manufacturers, but not a manufacturer who sells to unlicensed retailers. The reason for not confining the class to manufacturers who sell to licensed manufacturers, licensed wholesalers, or licensed retailers is understandable. If the class is so confined, the exemption from the tax on selling with respect to sales for delivery outside of this Territory becomes nugatory because such sales are usually made directly to manufacturers and wholesalers outside of this Territory, who are not subject to the general excise tax law and are therefore unlicensed.

The conclusion to be reached from the foregoing consideration is that, as to category 2, the sales of the taxpayer to the gas company did not constitute wholesale sales because the gas company was not a licensed manufacturer nor were they sales for delivery outside of this Territory; that such sales, not being wholesale sales or for delivery outside of the Territory, were not exempt, under paragraph (5) of section 5455B, from the tax on selling at the higher rate imposed on "every person"; that the taxpayer was therefore liable for the tax on selling at the higher rate, and, being so liable, it was not taxable as a manufacturer on whose gross income a tax is not otherwise levied under the general excise tax law.

As to category 3, the determinative factor is our holding under category 1 that the word "licensed" as used in the general excise tax law means licensed under such law. The tax appeal court ruled that the sales by the taxpayer to the gas company in this category constituted sales by a manufacturer to a licensed retailer. The taxpayer states that such ruling does not necessarily preclude a finding that the gas company was a licensed manufacturer. It is immaterial whether the gas company was a retailer or a manufacturer. In either case it was not licensed. The taxpayer sold to an unlicensed purchaser and so the sales did not constitute wholesale sales. The sales were not made for delivery outside of this Territory. Thus, our conclusion with respect to category 3 is the same as in the case of category 2, that the taxpayer was liable for the tax on selling at the higher rate, and, being so liable, it was not taxable as a manufacturer on whose gross income a tax is not otherwise levied under the general excise tax law.

We have not, up to this point, considered the question as to whether the gas company was a manufacturer for the reason that the fact that it was not licensed was

sufficiently determinative of the issue in the instant case. However, the issue in the case may also be decided on the ground that the gas company was not a manufacturer. The gas company was during the period covered by the assessment in this case, and still is, a public utility. Public utilities are treated separately from other persons under our laws. They are regulated and taxed under the laws that are applicable only to public utilities. The general excise tax law specifically exempts public utilities from its coverage. The unique character of public utilities has been recognized under the prior decisions of this court. (*Honolulu R. T. Co.* v. *Wilder,* 30 Haw. 685, 696, *Hawaii Con. Ry.* v. *Borthwick,* 34 Haw. 269, 281) In *Hawaii Con. Ry.* v. *Borthwick, supra,* this court said: "By the Act [R. L. H. 1945, ch. 106] utilities are put in a special class by themselves." Other jurisdictions have also recognized the unique existence of public utilities. (*Ottawa Gas Light & Coke Co.* v. *Downey,* 127 Ill. 201, 20 N. E. 20; *Williams* v. *Rees,* 2 Fed. 882; *City of Bolivar* v. *Ozark Utilities Co.* 238 Mo. App. 860, 191 S. W. [2d] 368; *People* v. *Wyanet Electric Light Co.,* 306 Ill. 377, 381, 137 N. E. 834, 835) In *People* v. *Wyanet Electric Light Co., supra,* in determining that a public utility was not a corporation organized purely for manufacturing and mercantile purposes, the Supreme Court of Illinois stated: "We do not think that appellee can be considered as having been organized for purely manufacturing and mercantile purposes, or for either of such purposes, within the meaning of the statute. * * * Appellee belongs to the class of corporations ordinarily known and referred to as public utilities. Such corporations form a particular class by themselves and are regulated by special provisions of our statute known as the Public Utilities Act. * * * Corporations for purely mercantile purposes are well understood by the people in general. They form quite a large class of corporations, and

are very different in character from corporations known as public utilities. The same line of reasoning follows when we consider whether or not an electric light plant is organized for purely manufacturing purposes, and we have no hesitancy in saying that the appellee was not organized for purely manufacturing purposes within the meaning of such statute. Other states have made similar holdings that an electric light company is not a manufacturing industry or company within the meaning of taxing laws."

The decision of the tax appeal court is reversed and the case is remanded to the tax appeal court with direction to enter a judgement in accordance with this opinion.

*Rhoda V. Lewis,* Deputy Attorney General (also on the briefs), for Tax Commissioner, appellant.

*Richard E. Stifel (Anderson, Wrenn & Jenks* with him on the brief) for Pacific Refiners, Limited, appellee.