923 P.2d 952

**Miles M. HIGA, Plaintiff–Appellant,**

**v.**

**Fred LINO, also known as Fred X. Lino, Defendant–Appellee,**

**and**

**John Does 1–10, Doe Partnerships, Corporations and/or Other Entities 1–10, Defendants.**

**No. 16166.**

Intermediate Court of Appeals of Hawai'i.

Sept. 10, 1996.

Certiorari Denied Sept. 30, 1996.

Melvin Y. Agena and Emlyn H. Higa (Turk & Agena, of counsel), on the briefs, Honolulu, for plaintiff-appellant.

Harvey E. Henderson, Jr. and Michael H. Tsuchida (Moon, O'Connor, Tam & Yuen, of counsel), on the brief, Honolulu, for defendant-appellee.

Before BURNS, C.J., KIRIMITSU, J., and HIRAI, Circuit Judge in place of ACOBA, J., Recused.

KIRIMITSU, Judge.

The present case involves a lawsuit brought by a passenger against one of the drivers in a multiple car accident. Plaintiff-appellant Miles M. Higa (Plaintiff), a passenger in a car driven by defendant-appellee Fred Lino (Defendant), appeals from the circuit court's May 18, 1992 judgment in favor of Defendant. We vacate the judgment and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

On September 8, 1985, Plaintiff was a passenger in a car operated by Defendant. While traveling toward Kokohead on Farrington Highway, Defendant's car collided into the rear of an abandoned car, which had been left unattended on the highway. Plaintiff sustained injuries as a result of this first accident.

Defendant then removed Plaintiff from Defendant's car and placed Plaintiff on the shoulder of the highway to await an ambulance. Another car, operated by Jimmy Bolosan (Bolosan), somehow caused a second accident that further injured Plaintiff.[1]

Plaintiff received no-fault benefits under Defendant's automobile insurance policy, and these no-fault benefits were exhausted on December 10, 1987. Plaintiff also received no-fault benefits from Bolosan's automobile insurance policy, and according to Plaintiff, he was still receiving these benefits as of February 26, 1991.

On October 11, 1990, Allstate Insurance Company gave Plaintiff a $75,000 check as "final settlement of any and all claims for bodily injury under uninsured motorists coverage arising from accident [sic] on Septem-

---

1. Plaintiff-appellant Miles M. Higa (Plaintiff) and defendant-appellee Fred Lino (Defendant) disagree as to the facts underlying this second accident. According to Defendant, Jimmy Bolosan's (Bolosan) car ran over Plaintiff. In contrast, Plaintiff alleges that Bolosan's car collided into another car parked on the shoulder of Farrington Highway, causing this parked vehicle to strike Plaintiff. We cannot determine from the record or Plaintiff's opening brief whether this alleged parked car was Defendant's car, the abandoned car, or another parked vehicle.

ber [8], 1985." The insureds were Masao and M.P. Higa, and the claimant designated on the check was Plaintiff.[2]

On February 2, 1990, Plaintiff filed a complaint against Defendant and Bolosan. On January 25, 1991, Plaintiff amended his complaint by removing Bolosan as a co-defendant and claiming damages from Defendant based solely on negligence.

On July 24, 1991, Defendant moved for summary judgment, arguing that Plaintiff's claim was barred by the statute of limitations under Hawai'i's no-fault laws.[3] The circuit court granted Defendant's summary judgment motion on October 28, 1991, and entered judgment in favor of Defendant on May 18, 1992. This timely appeal followed.[4]

## II. *STANDARD OF REVIEW*

On appeal, an order of summary judgment is reviewed under the same standard applied by the circuit courts. Summary judgment is proper where the moving party demonstrates that there are no genuine issues of material fact and it is entitled to a judgment as a matter of law. In other words, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.

*Iddings v. Mee–Lee*, 82 Hawai'i 1, 5, 919 P.2d 263, 267 (1996) (citation omitted).

2. The record is silent as to the relationship between Plaintiff and the insureds, Masao and M.T. Higa.

3. *See infra* part III.

4. Plaintiff first filed his notice of appeal on November 6, 1991. On March 30, 1992, we dismissed Plaintiff's appeal for lack of appellate jurisdiction because it was not taken from a judgment. The circuit court entered a judgment on May 18, 1992. Thereafter, Plaintiff filed a timely notice of appeal on May 22, 1992.

5. In 1987, Hawai'i Revised Statute (HRS) § 294–36(b) (1985) was recodified to HRS § 431:10C–315(b). 1987 Haw. Sess. L. Act 347, § 2 at 172. Although recodified in 1987, the language of HRS § 294–36(b) has remained unchanged.

## III. *DISCUSSION*

On appeal, Plaintiff challenges the circuit court's order granting Defendant's motion for summary judgment. Plaintiff argues that his amended complaint was not barred by the statute of limitations under Hawai'i's no-fault laws.

At the time of the September 8, 1985 accident, the applicable statute of limitations was codified in Hawai'i Revised Statutes (HRS) § 294–36(b) (1985), which provided:

(b) No suit arising out of a motor vehicle accident shall be brought in tort more than:

(1) Two years after the date of the motor vehicle accident upon which the claim is based; or

(2) Two years after the date of the last payment of no-fault or *optional additional benefits;*

(3) Two years after the date of the last payment of workers' compensation or public assistance benefits arising from the motor vehicle accident; whichever is the last to occur.[5]

(Emphasis added.) According to HRS § 294–36(b)(2), Plaintiff may not bring a claim in tort more than two years after the date of the last payment of no-fault or optional additional benefits.

In the instant case, Plaintiff received his last relevant no-fault benefit on December 10, 1987—when the no-fault benefits under Defendant's automobile insurance policy were exhausted.[6] On October 11, 1990,

6. Plaintiff also argues that his first amended complaint is timely if measured from Bolosan's last no-fault payment. Plaintiff insists that the timeliness of the amended complaint can be measured from Bolosan's no-fault payment if the injuries he received when Bolosan's car collided with Defendant's car are attributed to Defendant's negligence. Accordingly, Plaintiff maintains that summary judgment was inappropriate because a genuine issue of material fact exists as to whether his injury from Bolosan's accident is causally connected to Defendant's negligence.

First, we need not consider this argument in light of our present holding in this case. *See* discussion, *supra.* Secondly, if we did consider this argument, we believe that the no-fault benefits referred to in HRS § 294–36(b) are limited to no-fault benefits arising only from the Lino accident, and not from the later Bolosan accident.

Plaintiff received a payment of uninsured motorist benefits from Masao and M.P. Higa's automobile insurance policy, and on January 25, 1991, Plaintiff filed his first amended complaint against Defendant.

If we utilize December 10, 1987, the date of Plaintiff's last no-fault payment, as the starting point in measuring the two-year statute-of-limitations period, Plaintiff's January 25, 1991 first amended complaint would clearly be barred under HRS § 294–36(b)(2). However, if we use October 11, 1990, the date of Plaintiff's uninsured motorist payment, as the starting point, Plaintiff's January 25, 1991 first amended complaint would be timely.

As discussed, *supra*, HRS § 294–36(b)(2) provides in relevant part: "No suit arising out of a motor vehicle accident shall be brought in tort more than ... [t]wo years after the date of the last payment of ... *optional additional benefits* [.]" (Emphasis added.) Thus, a key question arises as to whether uninsured motorist benefits constitute "optional additional benefits" for the purposes of HRS § 294–36(b)(2).

■ "Under general principles of statutory construction, courts give words their ordinary meaning unless something in the statute requires a different interpretation." *Saranillio v. Silva*, 78 Hawai'i 1, 10, 889 P.2d 685, 694 (1995) (citing *Ross v. Stouffer Hotel (Hawaii) Ltd.*, 76 Hawai'i 454, 461, 879 P.2d 1037, 1044 (1994)). In the instant case, the words "additional optional benefits" are not defined by statute; accordingly, in interpreting the language of HRS § 294–36(b)(2), we give the words "optional additional benefits" their plain and ordinary meaning.

Reading HRS § 294–36(b)(2) on its face, we conclude that the words "additional optional benefits" refer to other insurance benefits that an insured may elect to purchase or elect not to purchase, as the case may be.[7] These "additional optional benefits" are benefits in addition to those benefits that are required by law in all automobile insurance policies.

Uninsured motorist benefits clearly fit this definition of "additional optional benefits." At the time of the September 8, 1985 accident, HRS § 431–448(a) (1985) governed uninsured motorist benefits and provided:

(a) *No automobile liability or motor vehicle liability policy* insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle, *shall be delivered, issued for delivery, or renewed in this State*, with respect to any motor vehicle registered or principally garaged in this State, *unless coverage is proved* therein or supplemental thereto, in limits for bodily injury or death set forth in section 287–7, under provisions filed with and approved by the insurance commissioner, *for the protection of persons insured* thereunder who are legally entitled to recover damages *from owners or operators of uninsured motor vehicles* because of bodily injury, sickness, or disease, including death, resulting therefrom, *provided that the coverage required under this section shall not apply where any insured named in the policy shall reject the coverage in writing.*

(Emphases added.) According to the plain language of HRS § 431–448(a), all automobile insurance policies must include uninsured motorist benefits unless the insured elects, in writing, not to purchase such coverage.

As discussed, *supra*, because the words "additional optional benefits" in HRS § 294–36(b)(2) refer to those insurance benefits that an insured may elect to purchase or elect not to purchase and because, pursuant HRS § 431–448(a), an insured may elect not to purchase uninsured motorist benefits, we hold that uninsured motorist benefits consti-

---

Therefore, the timeliness of Plaintiff's amended complaint should not be measured from Bolosan's last no-fault payment.

7. Defendant argues that the terms "optional additional benefits" in HRS § 294–36(b)(2) refer only to benefits provided in HRS Chapter 294. We find nothing in the language or legislative history of HRS § 294–36 to support such a narrow reading.

tute "optional additional benefits" for the purposes of HRS § 294–36(b)(2).[8]

In addition, because Plaintiff received a payment of uninsured motorist benefits, or optional additional benefits, on October 11, 1990, and because HRS § 294–36(b) only bars tort actions brought more than two years after the date of the last payment of optional additional benefits, we conclude Plaintiff's January 25, 1991 first amended complaint was filed in a timely manner—well before the end of the two-year statute-of-limitations period provided in HRS § 294–36(b).

Because Plaintiff's first amended complaint was not barred by HRS § 294–36(b) and because genuine issues of material fact still remain in this case, we further hold that the circuit court erred in granting Defendant's motion for summary judgment and, as a consequence, in entering judgment in favor of Defendant.

## IV. CONCLUSION

For the reasons set forth above, we vacate the circuit court's May 18, 1992 judgment and remand for further proceedings consistent with this opinion.

---

**8.** Although we need not look beyond the plain and unambiguous language of HRS § 294–36(b), we note our holding today is also consistent with the legislative intent of HRS § 294–36(b).

Generally, the legislative history of HRS § 294–36(b) is silent as to the meaning behind the words "optional additional benefits." However, in 1984, the legislature amended HRS § 294–36(b) to permit a tort action within "[t]wo years after the date of the last payment of workers' compensation or public assistance benefits arising from the motor vehicle accident[.]" 1984 Haw. Sess. L. Act 28, § 1 at 67–68; HRS § 294–36(b)(3) (1985). The senate standing committee report regarding this 1984 amendment stated:

"This bill amends Section 294–36(b), Hawaii Revised Statute, to end this discriminatory provision by providing the same deadline to all individuals *regardless of the type of benefits they may be receiving.*" Sen. Stand. Comm. Rep. 522, in 1983 Senate Journal, at 1276 (emphasis added). *See also* Hse. Stand. Comm. Rep. 546, in 1984 House Journal, at 1108.

While not directly on point, this senate standing committee report does provide some support for the proposition that the legislature intended to give a broad meaning to the language "optional additional benefits" to include, *inter alia*, uninsured motorist benefits.