949 P.2d 213

Earl Y. HONBO and Karen Honbo,
Plaintiffs–Appellants,

v.

HAWAIIAN INSURANCE & GUARANTY
COMPANY, LIMITED, a Hawai'i corpo-
ration, and Hawaiian Insurance & Guar-
anty Association, Defendants–Appellees,

and

Reynaldo D. Graulty, Insurance Commis-
sioner of the State of Hawai'i in his ca-
pacity as Rehabilitator of Hawaiian In-
surance & Guaranty Company, Limited,[1]
HUI/UNICO in Liquidation Inc., and
Doe Defendants 1–10, Defendants.

No. 19865.

Intermediate Court of Appeals of Hawai'i.

Nov. 28, 1997.

Certiorari Denied Jan. 8, 1998.

1. Reynaldo D. Graulty (Graulty) succeeded Law-
rence Reifurth (Reifurth) as the Insurance Com-
missioner of the State of Hawai'i during the
pendency of this action. Pursuant to Hawai'i
Rules of Appellate Procedure (HRAP) Rule
43(c)(1) (Sept.1995), Graulty has been substitut-
ed automatically for Reifurth in the instant case.

David C. Schutter, Mitchell S. Wong, and Gary D. Weingarden (David C. Schutter & Associates, of counsel), on the briefs, Honolulu, for plaintiffs-appellants.

Kevin P.H. Sumida, Honolulu, and Daryl M. Arakaki (Matsui Chung Sumida & Chang, of counsel), on the brief, for defendant-appellee Hawaii Insurance Guaranty Association.

Richard B. Miller and David R. Harada-Stone (McCorriston Miho Miller Mukai, of counsel), on the brief, Honolulu, for defendant-appellee Hawaiian Insurance & Guaranty Company, Limited.

Before WATANABE, ACOBA and KIRIMITSU, JJ.

KIRIMITSU, Judge.

Plaintiffs-Appellants Earl Honbo (Earl) and Karen Honbo[2] (collectively, Plaintiffs) appeal the First Circuit Court's April 26, 1996 Final Judgment that dismissed all claims against Defendants–Appellees Hawaiian Insurance & Guaranty Co., Ltd. (HIG) and Hawaiian Insurance Guaranty Association (HIGA) (collectively, Defendants) pursuant to the January 9, 1996 and February 15, 1996 orders granting Defendants' motions for summary judgment. The orders found that all of Plaintiffs' claims were not timely brought within the two-year statute of limita-

tions period set forth in Hawai'i Revised Statutes (HRS) § 294–36(a) (1985). For the reasons stated below, we affirm the April 26, 1996 Final Judgment.

## I. BACKGROUND

The facts in this case are undisputed. On January 16, 1986, Earl was involved in an automobile accident (Accident No. 1). On August 9, 1986, Earl was involved in a second automobile accident (Accident No. 2). Consequently, Earl filed a claim for no-fault benefits for injuries arising out of both accidents with HIG.

On July 22, 1988, HIG informed Earl that he had exhausted his no-fault insurance benefits for Accident No. 1. On February 14, 1989, HIG informed Earl that he had exhausted his no-fault insurance benefits for Accident No. 2.

In March 1990, Plaintiffs sued each driver of Accident Nos. 1 and 2 in a single negligence lawsuit. The parties reached a settlement agreement and a Stipulation for Dismissal with Prejudice was filed on September 8, 1992.

On December 10, 1992, Plaintiffs issued a demand letter to HIG for Underinsured Motorist (UIM) coverage for Accident Nos. 1 and 2.[3] After receiving no response from HIG, Plaintiffs filed a lawsuit against Defendants,[4] seeking relief of UIM benefits (UIM claim) and damages for alleged bad faith handling of their UIM claim (bad faith claim).

Subsequently, Defendants filed motions for summary judgment claiming Plaintiffs' suit was filed beyond the two-year statute of limi-

2. Although Plaintiff–Appellant Karen Honbo was not involved in either Accident No. 1 or No. 2, she claimed to have suffered severe emotional and mental distress and loss of consortium as a result of injuries sustained by her husband, Earl Honbo.

3. Plaintiffs–Appellants Earl Honbo and Karen Honbo (collectively, Plaintiffs) did not pay for underinsured motorist (UIM) coverage at the time of the accidents. However, the record on appeal does not state whether Defendant–Appellee Hawaiian Insurance & Guaranty Co., Ltd. (HIG) complied with the holding of *Mollena v. Fireman's Fund Ins. Co. of Haw., Inc.*, 72 Haw.

314, 320, 816 P.2d 968, 971 (1991) (holding an insured has UIM coverage implied as a matter of law if the insurer fails to make a legally sufficient offer of UIM coverage). As such, we will consider this appeal on the assumption that Plaintiffs were entitled to UIM coverage as a matter of law.

4. HIG was declared insolvent on May 25, 1993. As such, Defendant–Appellee Hawaiian Insurance Guaranty Association (HIGA) was assigned to handle certain "covered claims" outstanding against HIG.

tations as set forth in HRS § 294–36(a).[5] The circuit court agreed with Defendants and found that the two-year statute of limitations for Accident No. 1 expired on July 22, 1990; the two-year statute of limitations for Accident No. 2 expired on February 14, 1991; and therefore, the instant lawsuit, filed on September 7, 1994, was not timely asserted within the applicable two-year period of HRS § 294–36(a). Accordingly, the circuit court granted Defendants' motions for summary judgment.

A Final Judgment was entered on April 26, 1996, and Plaintiffs timely filed this appeal on May 15, 1996.

## II. STANDARD OF REVIEW

On appeal, an order of summary judgment is reviewed under the same standard applied by the circuit courts. Summary judgment is proper where the moving party demonstrates that there are no genuine issues of material fact and it is entitled to a judgment as a matter of law. In other words, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.

*Iddings v. Mee–Lee*, 82 Hawai'i 1, 5, 919 P.2d 263, 267 (1996) (citation omitted).

## III. DISCUSSION

This case presents two questions on appeal: first, whether Plaintiffs' UIM claim is time barred by the two-year statute of limitations set forth in HRS § 294–36(a); and second, whether Plaintiffs' bad faith claim is time barred by the two-year statute of limitations set forth in HRS § 294–36(a).

### A. UIM claim

To determine whether Plaintiffs' UIM claim is time barred, we address the question of (1) whether Plaintiffs' UIM claim is governed by the statute of limitations set forth in HRS § 294–36(a), and if so, (2) whether it bars Plaintiffs' UIM claim.

### 1. HRS § 294–36(a) applies to UIM claims.

■ On its face, HRS § 294–36(a) applies to any suit "brought on any contract providing no-fault benefits or any contract providing optional additional coverage." HRS § 294–36(a). Thus, the dispositive question is whether UIM benefits constitute "optional additional benefits" for the purpose of HRS § 294–36(a).

We have already held that "optional additional benefits," as used in HRS § 294–36(b)(2), refer to "those insurance benefits that an insured may elect to purchase or elect not to purchase[.]" *Higa v. Lino*, 82 Hawai'i 535, 538, 923 P.2d 952, 955, *cert. denied*, 83 Hawai'i 204, 925 P.2d 374 (1996). Thus, in *Higa*, we determined that uninsured motorist benefits constitute "optional additional benefits" for the purpose of HRS § 294–36(b)(2). *Id.* at 538–39, 923 P.2d at 955–56. Additionally, HRS § 431–448(b) (1985) states, in relevant part, that "[e]ach insurer shall offer ... optional additional insurance coverage for loss resulting from ... underinsured motor vehicles."

Accordingly, we now extend the reasoning and holding of *Higa* to the immediate case

---

5. Hawai'i Revised Statutes (HRS) § 294–36(a) (1985) states:
 (a) No suit shall be brought on any contract providing no-fault benefits or any contract providing optional additional coverage more than:
 (1) Two years from the date of the motor vehicle accident upon which the claim is based; or
 (2) Two years after the last payment of no-fault or optional additional benefits; or
 (3) Two years after the entry of a final order in arbitration; or
 (4) Two years after the entry of a final judgment in, or dismissal with prejudice of, a

tort action arising out of a motor vehicle accident, where a cause of action for insurer bad faith arises out of the tort action; whichever is the last to occur.

On July 1, 1987, HRS chapter 294 was repealed and recodified in chapter 431, the Hawai'i Insurance Code. Thus, the current statute of limitations can be found at HRS § 431:10C–315 (1993). However, in this case, HRS § 294–36 was in effect at the time of the accident, and therefore, this Court is faced with the interpretation of HRS § 294–36.

and conclude that for the purpose of HRS § 294–36(a), UIM benefits constitute "optional additional benefits." As such, we hold that HRS § 294–36(a) applies to UIM claims.

Plaintiffs argue that HRS § 294–36(a) does not apply to UIM claims. Instead, they urge the court to create a new two-year statute of limitations period, specifically for UIM claims, that would start to accrue from the date of "the payment of a judgment or settlement by the third-party insurer."[6] However, the Hawai'i Supreme Court has long held that:

> If there is any inequality or any situation that was overlooked in the law, it is up to the legislature to make the correction. For this court to do so under the guise of statutory construction is to indulge in judicial legislation which we are prohibited from doing under the doctrine of separation of powers.... The judicial function to be exercised in construing a statute is limited to ascertaining the intention of the legislature therein expressed. A *casus omissus* does not justify judicial legislation.

*In re Taxes, Pac. Refiners, Ltd.*, 41 Haw. 615, 625–26 (1957) (internal quotation marks and citations omitted); *see also Sherman v. Sawyer*, 63 Haw. 55, 57, 621 P.2d 346, 348 (1980) (acknowledging that the legislature is the branch empowered to enact laws and to declare what the law shall be); *Bissen v. Fujii*, 51 Haw. 636, 638, 466 P.2d 429, 431 (1970) (holding the same). Thus, if a special statute of limitations for UIM claims is necessary, then the legislature is the appropriate branch of government to effectuate the change.

**6.** Plaintiffs cite *Quintano v. Mercury Cas. Co.*, 11 Cal.4th 1049, 48 Cal.Rptr.2d 1, 906 P.2d 1057 (1995) for the proposition that HRS § 294–36(a) does not apply to UIM claims. In *Quintano*, the California court was faced with the application of California Insurance Code § 11580.2 (1988) (statute of limitations for actions on insurance policy). *Id.* at 1059. However, the language of § 11580.2 is completely different from HRS § 294–36(a). Furthermore, the *Quintano* court was faced with two conflicting subsections of California Insurance Code § 11580.2. *Id.* As such, Plaintiffs' reliance on *Quintano* is misplaced.

Accordingly, we hold that HRS § 294–36(a) applies to Plaintiffs' UIM claim.

### 2. *Plaintiffs' UIM claim is time barred by HRS § 294–36(a).*

■ HRS § 294–36(a)(2)[7] specifically provides that no suit shall be brought on any contract providing no-fault benefits or optional additional coverage more than two years after the last payment of no-fault or optional additional benefits.

Earl exhausted his last no-fault payment on July 22, 1988 for Accident No. 1, and February 14, 1989 for Accident No. 2. Therefore, the statute of limitations for Plaintiffs' UIM claim expired on July 22, 1990 and February 14, 1991, respectively. Accordingly, Plaintiffs' lawsuit on their UIM claim, filed on September 7, 1994, was barred by the two-year statute of limitations period set forth in HRS § 294–36(a)(2). Hence, the trial court did not err by granting summary judgment on the UIM claim.

### B. *Bad Faith Claim*

Plaintiffs also brought a first-party insurer bad faith claim which raises the following issues: (1) whether HRS § 294–36(a)(4), in particular, applies to first-party insurer bad faith claims; if not, (2) whether HRS § 294–36(a), in general, applies to first-party insurer bad faith claims; and if so, (3) whether Plaintiffs' first-party insurer bad faith claim is barred by the two-year statute of limitations set forth in HRS § 294–36(a).[8]

### 1. *HRS § 294–36(a)(4) does not apply to first-party insurer bad faith claims.*

■ Plaintiffs argue on appeal that the two-year statute of limitations period set

**7.** HRS § 294–36(a)(2) is the only applicable time limitation for Plaintiffs' UIM claim. For a complete reading of the statute, *see supra* n. 5.

**8.** The torts of first- and third-party insurer bad faith were expressly recognized in *Best Place, Inc. v. Penn Am. Ins. Co.*, 82 Hawai'i 120, 920 P.2d 334 (1996). However, because *Best Place* involved property insurance, the Court did not address the impact of its holding upon Hawai'i's no-fault law and accompanying statute of limitations. *See id.* at 131–33, 920 P.2d at 345–47. Thus, our holding today does not disrupt or contradict in any way the Hawai'i Supreme Court's decision in *Best Place.*

forth in subsection (4) of HRS § 294–36(a) applies to their first-party insurer bad faith claim. We disagree.

a.

HRS § 294–36(a)(4) reads as follows:

(a) No suit shall be brought on any contract providing no-fault benefits or any contract providing optional additional coverage more than:

....

(4) Two years after the entry of a final judgment in, or dismissal with prejudice of, a tort action arising out of a motor vehicle accident, *where a cause of action for insurer bad faith arises out of the tort action;* whichever is the last to occur.

HRS § 294–36(a)(4) (emphasis added).

 It is well established that "where the language of the law in question is plain and unambiguous, construction by [the] court is inappropriate and [the court's] duty is only to give effect to the law according to its plain and obvious meaning." *Strouss v. Simmons,* 66 Haw. 32, 50, 657 P.2d 1004, 1016 (1982) (citations, quotations marks, and brackets omitted). Furthermore, " '[u]nder general principles of statutory construction, courts give words their ordinary meaning unless something in the statute requires a different interpretation.' " *Higa v. Lino,* 82 Hawai'i at 538, 923 P.2d at 955 (quoting *Saranillio v. Silva,* 78 Hawai'i 1, 10, 889 P.2d 685, 694, *reconsideration denied,* 78 Hawai'i 421, 895 P.2d 172 (1995)). Accordingly, we ask ourselves whether HRS § 294–36(a)(4) is plain and unambiguous.

In following the principles of statutory construction, it is our opinion that the language of HRS § 294–36(a)(4) is plain and unambiguous. It clearly permits a cause of action for insurer bad faith to be brought within two years of the entry of a final judgment in, or dismissal with prejudice of, a tort action arising out of a motor vehicle accident. It also clearly limits that cause of action for insurer bad faith to those which "arise out of the tort action."

The term "arise" is defined by *Black's Law Dictionary* 108 (6th ed.1990) as "[t]o spring up, originate, to come into being or notice[.]" Thus, by its plain and unambiguous terms, HRS § 296–36(a)(4) allows only those insurer bad faith claims which originate out of the tort action.

Additionally, in reading the language of the statute in its entirety, it is clear that the legislature intended to permit only those insurer bad faith claims that arise out of the *tort action* itself. The legislature could have easily expanded the scope of the statute to include those insurer bad faith claims that arise out of the *motor vehicle accident,* since it previously used such language to describe the nature of the tort action. However, the legislature did not. Instead, it specifically limited insurer bad faith claims to those which "arise out of the tort action."

Because the language of HRS § 294–36(a)(4) is plain and unambiguous, we are now left only to apply its terms to the immediate case. As will be illustrated, a literal application of the statute will limit the extended time limitation of HRS § 294–36(a)(4) to third-party, and not first-party, insurer bad faith claims.

It is important to differentiate between first-party and third-party insurer bad faith claims because each arise out of different sets of circumstances. Fundamentally speaking, first-party bad faith claims arise out of the insurer's bad faith handling of a first-party claim. *Waters v. United Servs. Auto Ass'n,* 41 Cal.App.4th 1063, 48 Cal. Rptr.2d 910, 913 (1996) (" 'First party bad faith lawsuits' involve an insured's claims against the insurer under coverages written for the insured's direct benefit under a first party policy"). First-party claims relate to those claims made by the insured against its insurer for losses suffered by the insured (i.e., underinsured and uninsured motorist claims). *Best Place, Inc. v. Penn Am. Ins. Co.,* 82 Hawai'i 120, 124 n. 4, 920 P.2d 334, 338 n. 4 (1996). Thus, first-party insurer bad faith claims typically arise out of an insurer's unreasonable refusal to pay money directly to the insured for claims made on the insurance policy itself. *Waters,* 48 Cal.Rptr.2d at 914 (quoting that "[t]he gravamen of a first party [bad faith] lawsuit is a breach of the implied covenant of good faith and fair deal-

ing by refusing, without proper cause, to compensate the insured for a loss covered by the policy[,] or by unreasonably delaying payments due under the policy").

On the other hand, third-party bad faith claims arise out of the insurer's bad faith handling of a third-party claim (i.e., bad faith surrounding an insurer's duty to defend, to settle, or investigate a third-party claim). *See Best Place,* 82 Hawai'i at 124 n. 4, 920 P.2d at 338 n. 4. Third-party claims are those that relate to claims made by third parties against the insured for losses suffered by the third party. Thus, the typical scenario of third-party insurer bad faith claims arise out of the insurer's behavior during the litigation of an action brought by an injured third party against the tortfeasor or insured to recover damages for losses suffered by the injured third party (i.e., the underlying motor vehicle tort action). In this scenario, if an insurer unreasonably refuses to accept the third party's offer to settle claims against the insured and thereby exposes the insured to personal liability beyond the coverage limits, this has been commonly classified as third-party insurer bad faith. *See id.* at 124, 920 P.2d at 338; *Waters,* 48 Cal.Rptr.2d at 914 (noting that third party bad faith lawsuits "generally involve an insured's suit against his liability insurer arising out of the insurer's mishandling of a third party claim against its insured, such as by unreasonably refusing to settle within the policy limits or unreasonably refusing to provide a defense in a third party action").

■ Thus, given the nature of first-party and third-party insurer bad faith claims, only third-party insurer bad faith claims can "arise out of the tort action." Put another way, first-party insurer bad faith claims, by definition, cannot arise out of the litigation of the underlying motor vehicle tort action because such an action relates only to third-party claims. Accordingly, we hold that by its plain and unambiguous terms, HRS

§ 294–36(a)(4) does not apply to first-party insurer bad faith claims.[9]

b.

■ Our literal application of the statute remains in harmony with the general objectives of Hawai'i's no-fault law.[10] Hawai'i's no-fault law encourages insureds to bring their claims to court within a reasonable time. *Wiegand v. Allstate Ins. Cos.,* 68 Haw. 117, 121, 706 P.2d 16, 19 (1985). Additionally, one of the primary objectives to Hawai'i's no-fault law is to " 'expedite the settling of all claims.' " *Id.* (quoting Hse. Stand. Comm. Rep. No. 187, in 1973 House Journal, at 836); *Cochran v. Pflueger Autos., Inc.,* 72 Haw. 460, 464, 821 P.2d 934, 936 (1991). Thus, an insured should feel some obligation to present all of his or her potential claims to the insurer within a reasonable time. This reasonable time is codified in the statute of limitations period set forth in HRS § 294–36(a) (i.e., two years from the date of the accident, two years from the last no-fault or optional additional benefit payment, or two years from the final order of arbitration). If an insured fails to timely file a claim, then the claim becomes stale and the insurer is under no obligation to act upon it. Furthermore, if an insured attempts to tender a stale claim, an insurer should not be exposed to liability for any bad faith handling of that stale claim.

In this case, Plaintiffs failed to timely file a claim for UIM benefits. Nevertheless, Plaintiffs demanded benefits for their expired UIM claim. When Defendants did not respond to their demand, Plaintiffs asserted, under HRS § 294–36(a)(4), a claim for bad faith handling of their expired UIM claim. At least two California courts have found such an attempt to be "a transparent attempt to recover on the policy," notwithstanding the Plaintiffs' failure to commence suit within the applicable statute of limitations period. *Abari v. State Farm Fire and Cas. Co.,* 205

---

9. Sometimes, courts can depart from a literal construction of an unambiguous statute in special or egregious situations. *Matsushita v. Container Home Supply, Inc.,* 6 Haw.App. 439, 444, 726 P.2d 273, 277 (1986). However, there are no special or egregious circumstances in this case to warrant such a departure.

10. "Hawai'i no-fault law" is the short title given to Chapter 294 of Hawai'i Revised Statutes (Motor Vehicle Accident Reparations). HRS § 294–40 (1985).

Cal.App.3d 530, 252 Cal.Rptr. 565 (1988); *Lawrence v. Western Mut. Ins. Co.*, 204 Cal. App.3d 565, 251 Cal.Rptr. 319 (1988); *see also Prudential–LMI Ins. v. Superior Court*, 51 Cal.3d 674, 274 Cal.Rptr. 387, 394, 798 P.2d 1230, 1237 (1990) (acknowledging the holdings of *Abari* and *Lawrence*).

In *Lawrence v. Western Mut. Ins. Co.*, 204 Cal.App.3d 565, 251 Cal.Rptr. 319 (1988), a homeowner suffered damage caused by earth subsidence and filed a claim for benefits. The claim was denied as untimely, and therefore the homeowner brought a lawsuit against the insurer for benefits due under the policy, as well as for damages for bad faith handling of the claim.

The policy contained a statute of limitations provision which required the insured to file a lawsuit for damages within one year from the "inception of the loss." *Id.* 251 Cal.Rptr. at 322. The *Lawrence* court decided that "inception of the loss" was the date the insured discovered the damage and not when the insured knew or should have known that a "covered" loss had occurred. *Id.* at 322–23. As such, the court determined that the insured filed his lawsuit beyond the one-year limitations period. *Id.* at 323.

The *Lawrence* court also applied the one-year contractual limitation period to the insured's bad faith claim. *Id.* at 324. The insured argued that his bad faith claim was not subject to the one-year contractual limitation period because it was a tort claim that did not arise out of the policy. *Id.* The *Lawrence* court disagreed and noted that the insured's bad faith claim relates to the complete denial of the claim on the underlying policy. *Id.* Therefore, the insured's claim was "fundamentally a claim on the policy" and was time barred. *Id.* at 324–25.

Implicit in the *Lawrence* court's holding is the premise that the insured should not be allowed to circumvent the one-year contractual limitation by bringing an expired claim in the form of a bad faith claim.

Less than two months after deciding *Lawrence*, another California court was faced with a similar issue. *Abari v. State Farm Fire and Cas. Co.*, 205 Cal.App.3d 530, 252 Cal.Rptr. 565 (1988). In *Abari*, the insured discovered cracks in his dwelling and submitted a claim for benefits under his all risks homeowner's policy. Once again, the policy contained a one-year contractual limitation period. As such, the insurance company denied the insured's claim as untimely. The insured subsequently brought an action for benefits due on the claim, as well as for bad faith handling of the claim.

The *Abari* court agreed with the insurance company and held that the insured's claim was time barred by the one-year limitations period. *Id.* 252 Cal.Rptr. at 567. The court also determined that the one-year period applied to the insured's bad faith claim. *Id.* at 567–68. The court's reasoning for applying the one-year period can be summarized as follows: "[The insured's] ... bad faith and unfair practices claims are a transparent attempt to recover *on the policy*, notwithstanding his failure to commence suit within one year of accrual." *Id.* at 568 (emphasis in original).

Implicit in the court's finding is its decision to not allow the insured to circumvent the one-year limitations period by permitting the insured to bring a claim under the policy in the guise of a bad faith claim.

Thus, in the immediate case, if we were to agree with Plaintiffs and apply HRS § 294–36(a)(4) to their first-party insurer bad faith claim, we would be effectively allowing Plaintiffs to revive their expired UIM claim under the guise of a first-party insurer bad faith claim. As such, we are not persuaded by Plaintiffs' arguments that HRS § 294–36(a)(4) applies to first-party insurer bad faith claims.[11]

---

11. It is noteworthy that we are not faced with the question of whether an insured, who *timely* files a UIM claim with his or her insurer, is also precluded by HRS § 294–36(a) from bringing an action for either UIM benefits or for bad faith handling of his or her UIM claim. In such instance, there are compelling public policy reasons which would warrant a holding that a timely filing of a UIM claim with one's insurer tolls the statute of limitations under HRS § 294–36(a). *See Allstate Ins. Co. v. Wolcott*, 847 F.Supp. 787, 790 (D.Haw.1994) (noting that "to toll the two-year statute of limitations, the insured need only claim UIM benefits"); *Prudential–LMI, Ins. v. Superior Court*, 51 Cal.3d 674, 274 Cal.Rptr. 387, 395–98, 798 P.2d 1230, 1238–

c.

Furthermore, in studying the legislative history behind the language of HRS § 294–36(a)(4), it is clear that the legislature created the extension of the statute of limitations with the intent that it would apply to instances involving only third-party claims. When the no-fault law was initially passed in 1973, the provisions for the statute of limitations included only three deadlines: two years from the accident date; two years from the last payment of no-fault or optional additional benefits; or two years after the entry of a final order in arbitration. 1973 Haw. Sess. L. Act 203, § 36 at 399.

In 1984, HRS § 294–36(a) was amended to further provide an additional period of two years after the entry of a final judgment, or dismissal with prejudice of, a tort action arising out of a motor vehicle accident where a cause of action for insurer bad faith arose out of the tort action. 1984 Haw. Sess. L. Act 28, § 1 at 67–68. The legislative history behind this amendment clearly shows that it was made because the legislature was concerned about situations where bad faith arose in third-party claims. In the Senate's Standing Committee Report, the following was stated:

This bill would also allow persons who are involved in disputes over no-fault insurance contracts to file lawsuits for up to two years after the final judgment in a tort action arising out of a motor vehicle accident.

Presently, individuals that have insurance contract disputes must file their lawsuits within two years of a specified event, that is: (a) after the last payment of no-fault benefits or optional additional benefits; (b) from the date of the motor vehicle accident; or (c) after the entry of a final order in arbitration. No provision, however, is made for the situation where a dispute arises on the no-fault contract after entry of a final judgment in a tort claim which is more than two years from the auto accident or more than two years from the last no-fault payment. No matter how

meritorious the claim on the no-fault contract may be, it would be barred by the two-year statute of limitations.

This bill amends Section 294–36(a), Hawaii [Hawai'i] Revised Statutes, to correct this problem by providing additional time of up to two years after the entry of final judgment in a tort action to file a lawsuit.

Your committee heard testimony that a typical situation in which Section 294–36(a) may unjustly preclude a claim is when an insurer refuses to settle a claim within policy limits and a subsequent trial results in an award against the insured which exceeds the policy limits. In such cases the insured may have a claim against his or her insurer for bad faith in failing to settle the claim and thereby subjecting the insured to an award in an amount beyond his insurance coverage.

If the events presently listed in Section 294–36(a) have occurred more than two years before conclusion of the trial which resulted in the damages assessed against the insured, the insured would be precluded from bringing a bad faith action against the insurer.

*Because the question of whether or not the insurer failed to settle the claim in bad faith is dependent on the outcome of the litigation involving the motor vehicle accident on which the claim is based, the insured should have the benefit of a two-year statute of limitations starting from the date the litigation is concluded.*

Your Committee has amended the proposed changes to Section 294–36(a) to clarify that the extended statute of limitation is limited to actions for insurer bad faith.

Sen. Stand. Comm. Rep. No. 522, in 1983 Senate Journal, at 1276–77 (emphasis added).

As evidenced by the legislative history, the statute of limitations was extended for claims of insurer bad faith occurring in third-party claims because the insured would never know that he or she had a claim until after the trial of the tort case was over. As will be illus-

41 (1990) (adopting the trend of equitable tolling of the statute of limitations where insurer has

received timely notice of the loss).

trated, such a rationale does not apply to first-party claims.

### d.

Under HRS § 294–36(a), all lawsuits by an insured against the insurance company for claims made on an insurance policy must be brought within (1) two years from the date of the motor vehicle accident, (2) two years after the last payment of no-fault or optional additional benefits, or (3) two years after the entry of a final order in arbitration, whichever is the last to occur. HRS § 294–36(a)(1)—(3). Thus, ·if an insured fails to bring an action for no-fault or optional additional benefits (i.e., UIM benefits) within any one of these three time periods, then that insured is time barred from bringing an action after the statute of limitations has run.

If we were to interpret HRS § 294–36(a)(4) to include first-party insurer bad faith claims, then we would be undermining the entire purpose of the statute because we would be encouraging insureds, who have failed to timely file a claim or lawsuit for no-fault benefits or optional additional benefits under subsections (1), (2), and (3), to intentionally file an expired claim with their insurance company. As a result, the insurance company would have to handle the denial of an expired claim with "kid gloves" so as not to expose itself to bad faith liability. Furthermore, when, and if, the insurance company denies the claim as untimely filed, an insured would be allowed to file a bad faith action under HRS § 294–36(a)(4) for alleged bad faith handling of his or her expired claim, so long as it was still two years within the date of judgment of the underlying tort action.[12] As such, the net effect of interpreting HRS § 294–36(a)(4) to include first-party

insurer bad faith claims would be to wipe out the current statute of limitations period for lawsuits on any contract for no-fault and optional additional benefits, and replace it with a two-year statute of limitations period that begins to run from the date of final judgment on the underlying tort action. This is because, even though an insured fails to timely file a claim for no-fault or optional additional benefits under HRS § 294–36(a)(1)–(3), he or she can circumvent the statute by filing a lawsuit for the bad faith handling of expired claims and thereby recover benefits under the guise of "bad faith."

Arguably, an insured should be able to bring an action for UIM benefits within two years from the date of the judgment on the underlying tort action because that is the only time an insured conclusively knows whether UIM benefits are warranted. Therefore, it is arguable that we should interpret subsection (4) to permit a cause of action for alleged bad faith handling of a UIM claim in order for an insured to reap the benefits of a UIM claim that was not brought within the time limitations of subsections (1)–(3), but was brought within two years after the date of judgment. However, if we were to engage in such an interpretation, we would not only be undermining the intent and express mandates of the legislature, but we would also be engaging in the prohibited act of judicial legislation. If the legislature ultimately wants to allow an insured to recover UIM benefits within two years from the date of judgment of the underlying tort action, then it is the appropriate ·branch of government to effectuate such change.

---

**12.** Some jurisdictions have addressed this particular issue by holding that where a plaintiff seeks tort remedies on a claim for breach of the covenant of good faith and fair dealing,

> [t]here are at least two separate requirements to establish breach of the implied covenant: (1) benefits due under the policy must have been withheld; and (2) the reason for withholding the benefits must have been unreasonable or without proper cause.

*Love v. Fire Ins. Exch.*, 221 Cal.App.3d 1136, 271 Cal.Rptr. 246, 255 (1990). If we were to apply such reasoning in this case, Plaintiffs' bad faith claim would be precluded on the ground that

there were no *due* benefits which were withheld. *See California State Auto. Assn. Inter–Ins. Bureau v. Superior Court*, 184 Cal.App.3d 1428, 229 Cal. Rptr. 409, 412 (1986) (noting no award for bad faith can be made without first establishing that coverage exists). However, as explained by the Hawai'i Supreme Court in *Best Place*, a claim for the tort of bad faith does not turn on whether the claim for benefits was due or not, instead it turns on the conduct of the insurance company in handling the claim. *Best Place*, 82 Hawai'i at 132–33, 920 P.2d at 346–47. Thus, we decline to adopt this line of reasoning.

Accordingly, in consonance with the underlying objectives of Hawai'i's no-fault law, as well as the legislative intent of subsection (4) of HRS § 294–36(a), we hold that HRS § 294–36(a)(4) does not apply to first-party insurer bad faith claims.

### 2. HRS § 294–36(a) applies to first-party insurer bad faith claims.

■ Although we have just determined that HRS § 294–36(a)(4), specifically, does not apply to first-party insurer bad faith claims, we must now decide whether HRS § 294–36(a), in general, applies to first-party insurer bad faith claims. On its face, HRS § 294–36(a) applies to any "suit . . . brought on any contract providing no-fault benefits or any contract providing optional additional coverage[.]" Thus, the question is whether a bad faith claim constitutes a claim brought on any contract providing no-fault or optional additional coverage.

[T]he fundamental starting point is the language of the statute itself. . . . Moreover, where the language of the statute is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning. When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

State v. Toyomura, 80 Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995) (internal quotation marks, citations, ellipses, and brackets omitted).

In reading the statutory language in the context of the entire statute, and construing it in a manner consistent with its purpose, it is clear that the legislature intended HRS § 294–36(a) to apply to bad faith claims because it provides for third-party insurer bad faith claims under subsection (4) of HRS § 294–36(a). Any arguments in favor of creating a special statute of limitations specifically for first-party insurer bad faith claims must be addressed by the legislature. See In re Taxes, Pac. Refiners, Ltd., 41 Haw. at 625 (if there is any inequality or situation that was overlooked by the law, it is up to the legislature to make the correction). That being the case, we hold that by its clear and unambiguous terms, HRS § 294–36(a) applies to both first-party and third-party insurer bad faith claims.

### 3. Plaintiffs' bad faith claim is time barred by HRS § 294–36(a).

■ Because of our holding that first-party insurer bad faith claims are governed by HRS § 294–36(a), we must now determine whether Plaintiffs' first-party bad faith claim was timely filed. We have already determined that subsection (4) does not apply to Plaintiffs' bad faith claim. Thus, the only applicable section of HRS § 294–36(a) is subsection (2). We have already determined that Plaintiffs' UIM claim was not brought within the time limitations of subsection (2). As such, Plaintiffs' accompanying bad faith claim is also time barred. Thus, the trial court did not err in granting summary judgment on the bad faith claim.

### IV. CONCLUSION

In conclusion, we hold that (1) HRS § 294–36(a) applies to UIM claims; (2) the extended time limitation of HRS § 294–36(a)(4) does not apply to first-party insurer bad faith claims; and (3) HRS § 294–36(a) applies to both first- and third-party insurer bad faith claims.

Accordingly, we affirm the circuit court's April 26, 1996 Final Judgment.