949 P.2d 197

Walter WRIGHT, Petitioner–Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent–Appellee.

No. 19190.

Intermediate Court of Appeals of Hawai‘i.

Nov. 26, 1997.

Gary O. Galiher, L. Richard DeRobertis, and Jeffrey T. Ono, Galiher DeRobertis Nakamura Ono, on the briefs, Honolulu, for petitioner-appellant.

Stephen D. Tom and Rex K.C. Kim, White & Tom, on the brief, Honolulu, for respondent-appellee.

1. Hawai'i Revised Statutes (HRS) § 294–36(a)(2) (1985) was repealed in 1987 and recodified as HRS § 431:10C–315(a)(2) (1993). While the parties refer to HRS chapter 431, article 10C, "[Hawai'i] motor vehicle insurance law," in their briefs, HRS § 294–36 was in effect at the time of the March 14, 1987 accident in which Petitioner–Appellant Walter Wright (Wright) was injured and, therefore, HRS chapter 294, "Motor Vehicle Accident Reparations," applies to the instant case. However, HRS § 294–36 and HRS § 431:10C–315 are nearly identical and, therefore, the parties' references to HRS chapter 431 do not affect our opinion.

HRS § 294–36 stated:
**Statute of limitations.** (a) No suit shall be brought on any [insurance] contract providing no-fault benefits or any contract providing optional additional coverage more than

(1) Two years from the date of the motor vehicle accident upon which the claim is based;

(2) *Two years after the last payment of no-fault or optional additional benefits;*

(3) Two years after the entry of a final order in arbitration; or

(4) Two years after the entry of a final judgment in, or dismissal with prejudice of, a tort action arising out of a motor vehicle accident, where a cause of action for insurer bad faith arises out of the tort action; whichever is the last to occur.
(Emphasis added.)

HRS § 431:10C–315 states:
**Statute of limitations.** (a) No suit shall be brought on any [insurance] contract providing no-fault benefits or any contract providing optional additional coverage more than, the later of

(1) Two years from the date of the motor vehicle accident upon which the claim is based;

(2) *Two years after the last payment of no-fault or optional additional benefits;*

(3) Two years after the entry of a final order in arbitration; or

(4) Two years after the entry of a final judgment in, or dismissal with prejudice of, a

Before WATANABE, ACOBA and KIRIMITSU, JJ.

ACOBA, Judge.

We hold that a claim for motor vehicle no-fault insurance benefits made but unresolved before the end of the two-year period following the last payment of no-fault benefits tolls the Hawai'i Revised Statutes (HRS) § 294–36(a)(2) (1985)[1] statute of limitations as it applies to HRS § 294–32 (1985)[2] demands for arbitration of disputed no-fault claims. Therefore, we vacate the June 7, 1995 order

tort action arising out of a motor vehicle accident, where a cause of action for insurer bad faith arises out of the tort action.
(Emphasis added.)

2. HRS § 294–32 (1985) was repealed in 1987 and recodified as HRS § 431:10C–213 (1993), and provided that

*[a]ny dispute relating to a no-fault policy may be submitted to an arbitrator upon written request filed by a claimant or insurer with the clerk of the circuit court in the circuit where the accident occurred.* Any fee or cost of the arbitrator shall be borne equally by the parties unless otherwise allocated by the arbitrator. The administrative judge of each circuit court shall maintain a current list of persons qualified and willing to act as arbitrators and shall, within ten days of the date of the filing of a request for arbitration, appoint an arbitrator from such list to hear and determine the claim. Except as otherwise provided herein, the arbitration shall be in accordance with and governed by the provisions of chapter 658 [entitled Arbitration and Awards]. An appeal may be taken from any judgment of the arbitrator to the circuit court in the manner provided for in rule 72 of the [Hawai'i] Rules of Civil Procedure [entitled, "Appeal to a circuit court"].
(Emphasis added.)

HRS § 431:10C–213 is virtually identical in substance to HRS § 294–32. HRS § 431:10C–213 provides:

(a) *A claimant, insurer, or provider of services may submit any dispute relating to a no-fault policy to an arbitrator by filing a written request with the clerk of the circuit court in the circuit where the accident occurred.*

(b) The administrative judge of each circuit court shall maintain a current list of persons qualified and willing to act as arbitrators and shall, within ten days of the date of the filing of a request for arbitration, appoint an arbitrator from such list to hear and determine the claim.

(c) Except as otherwise provided herein, the arbitration shall be in accordance with and governed by the provisions of chapter 658 [entitled, "Arbitration and Awards"].

and August 11, 1995 judgment of the first circuit court (the court) which granted the motion of Respondent–Appellee State Farm Mutual Automobile Insurance Company (State Farm) to dismiss for untimeliness an arbitration proceeding requested by Petitioner–Appellant Walter Wright (Wright).

### I.

Wright was injured in an automobile accident on March 14, 1987. State Farm was Wright's insurer. State Farm made no-fault benefit payments to Wright for injuries sustained in the accident pursuant to HRS § 294–4 (1985).[3] The last no-fault payment was made on December 5, 1991. The two-year period from this last no-fault payment would expire on December 6, 1993.

Wright did not receive any treatment from November 1991 to December 1992. In December 1992 Wright "had an exacerbation of [his] cervical injury" "when [his] neck and back went into a spasm one night."

In December 1992 and January 1993, Wright obtained treatment for his cervical injury. On or about January 8, 1993, Wright notified State Farm by telephone of the "exacerbation ... and ... treatment." State Farm requested Wright to "forward all available record information."

Wright wrote State Farm a letter on April 28, 1993 setting out the circumstances, "including all available record information" and "receipts for the bills."

On June 29, 1993, State Farm wrote Wright, forwarding an authorization form for medical records which Wright "promptly" signed and returned to State Farm.

"At one point" State Farm indicated it had misplaced Wright's files.

The record also indicates that on November 1, 1993, State Farm filed a "challenge" to Wright's claim with the Hawai'i State Insurance Commissioner, and requested a "peer review organization to review the challenge."[4]

In February 1994, over a year after he contacted State Farm about the exacerbation of his neck injury, Wright received a letter dated February 17, 1994,[5] indicating that

---

(d) Any fee or cost of the arbitrator shall be borne equally by the parties unless otherwise allocated by the arbitrator.

(e) An appeal may be taken from any judgment of the arbitrator to the circuit court in the manner provided for in rule 72 of the [Hawai'i] Rules of Civil Procedure [entitled Appeal to a circuit court].

(Emphasis added.)

3. HRS § 294–4 (1985) was repealed in 1987 and recodified as HRS § 431:10C–304 (1993) in substantially the same form. HRS § 294–4 sets forth the no-fault insurer's obligation to pay no-fault benefits for "accidental harm" suffered by its insured.

The purpose of HRS chapter 294 was "to create a system of reparations for accidental harm and loss arising from motor vehicle accidents, to compensate these damages without regard to fault, and to limit tort liability for these accidents." HRS § 294–1(a) (1985).

As indicated previously, HRS chapter 294 was repealed and recodified in HRS chapter 431, article 10C. The purpose of HRS chapter 431, article 10C is the same as HRS chapter 294 which is to:

(1) Create a system of reparations for accidental harm and loss arising from motor vehicle accidents;

(2) Compensate these damages without regard to fault; and

(3) Limit tort liability for these accidents.

HRS § 431:10C–102(a) (1993).

4. A peer review organization is defined by HRS § 431:10C–308.6(b) (Supp.1996) as "any health care review company, approved by the [State of Hawai'i Insurance] commissioner, that engages in peer review for the purpose of determining that medical and rehabilitative services are appropriate and reasonable." When a peer review organization determines that a provider has rendered medical or rehabilitative services that were inappropriate or unreasonable or that future provision of such treatment will be inappropriate or unreasonable, the provider shall not collect payment from either the insured or the insurer. HRS § 431:10C–308.6(j) (Supp.1996).

It is questionable whether State Farm properly requested a peer review organization review of its challenge of Wright's claim for no-fault benefits. *Richard v. Metcalf*, 82 Hawai'i 249, 257, 921 P.2d 169, 177 (1996). ("[T]o the extent that [Hawai'i Administrative Rules] § 16–23–93 requires application of peer review procedures with respect to the treatment of injuries sustained prior to the effective date of the 1992 no-fault amendments, we hold that the rule is invalid....").

5. Although the denial letter of Respondent–Appellee State Farm Mutual Automobile Insurance Company (State Farm) was dated February 17, 1994, the denial form attached to it was dated February 18, 1994. Wright and State Farm both recognize the date of State Farm's denial of

State Farm had denied Wright's claim and that Wright could request "a review of . . . [his] claim," "submit [the] dispute to arbitration," or "bring [a] court action against [State Farm]."

On October 24, 1994, Wright, through his attorney, served State Farm with a request for arbitration "pursuant to [HRS] [c]hapters 431:10C–213 and 658,"[6] of State Farm's February 18, 1994 denial of no-fault benefits.

On November 21, 1994, Wright received a letter from State Farm requesting him to select one of three suggested doctors for a medical examination. The letter additionally indicated that State Farm was "also investigating whether the no-fault statute of limitations ha[d] run."

On November 21, 1994, the court appointed an arbitrator.

On November 23, 1994, the court filed Wright's request for arbitration. The November 23, 1994 date is written in and superimposed on an undecipherable stamp date.[7]

On December 8, 1994, State Farm filed its motion to dismiss.

On June 7, 1995, the court entered an order granting State Farm's motion to dismiss.

On August 11, 1995, judgment was entered in favor of State Farm and against Wright.

Wright presents four questions on appeal. Our conclusion that the statute of limitations in HRS § 294–36(a)(2) does not bar his suit is dispositive of this appeal and we need not address his remaining points.[8]

## II.

State Farm contends we should affirm the court based on HRS § 431:10C–315 and *Wie-*gand v. Allstate Ins. Co., 68 Haw. 117, 706 P.2d 16 (1985). Because HRS § 294–36, the predecessor of HRS § 431:10C–315, was in effect at the time of the accident we examine that statute.[9]

HRS § 294–36 provides, in pertinent part:

**Statute of limitations.** (a) *No suit shall be brought on any contract providing no-fault benefits* or any contract providing optional additional coverage *more than*

(1) Two years from the date of the motor vehicle accident upon which the claim is based;

(2) *Two years after the last payment of no-fault or optional additional benefits;*

(3) Two years after the entry of a final order in arbitration; or

(4) Two years after the entry of a final judgment in, or dismissal with prejudice of, a tort action arising out of a motor vehicle accident, where a cause of action for insurer bad faith arises out of the tort action; whichever is the last to occur.

(Emphases added.)

■ The plain wording of HRS § 294–36(a)(2) indicates that one cannot bring a suit on a contract for no-fault benefits more than two years after the last payment of no-fault benefits. The term "suit" in HRS § 294–36(a) encompasses a party's request to the circuit court for the appointment of an arbitrator to settle disputed no-fault claims pursuant to HRS § 294–32. *Wiegand*, 68 Haw. at 118–19, 706 P.2d at 18 (affirming that HRS § 294–36(a), requiring, in part, that suit on a contract providing no-fault benefits must be filed within two years of the last payment of no-fault benefits, "applies to de-

---

Wright's no-fault benefits claim as February 18, 1994.

**6.** HRS chapter 658 pertains generally to arbitration awards.

**7.** Wright contends that "[i]t took the Circuit court one month to file" his Request for Arbitration of No–Fault Benefits petition (the petition). Wright's affidavit of service of the petition on State Farm is dated October 24, 1994. The petition itself is signed and dated by Wright's attorney on October 26, 1994. However, the record is silent as to why the petition was not filed by the court until November 23, 1994.

**8.** We need not reach the contentions of Wright that: (1) State Farm is estopped from asserting its statute of limitations defense; (2) the court erred in dismissing Wright's request for arbitration when there was no rule, statute or regulation imposing a time limit on a request for arbitration of a no-fault dispute; and (3) the court committed an error of law when it held that Wright waited an unreasonable time to request arbitration.

**9.** See *supra* n. 1.

mands for arbitration to settle the disputed claims for no-fault benefits" made under HRS § 294–32).

Thus, in *Wiegand* the supreme court upheld the denial of no-fault arbitration petitions to the circuit court where the demand for arbitration by the insured was made more than two years after the last no-fault payment had been made. In *Wiegand*, the application for benefits, demand for compensation, and submission of bills took place *after* the two-year limitation period had expired.

Similarly, in *Cochran v. Pflueger Autos., Inc.*, 72 Haw. 460, 463–64, 821 P.2d 934, 936 (1991), the supreme court stated that "[t]he typical no-fault benefit recipient's claim will become time-barred under the statute two years after the last no-fault payment. At that time, HRS § 294–36(a) prevents the no-fault payee from initiating suit to compel additional payments from its carrier." In *Cochran*, as in *Wiegand*, the "subsequent claims" for benefits were also made *after* the two-year limitation period had expired.[10]

Relying on these decisions, State Farm maintains that Wright's claim was also time-barred because Wright's petition demanding arbitration was filed more than two years after his last no-fault payment on December 5, 1991.

However, unlike the insureds in *Wiegand* and *Cochran*, Wright's claims were not made *after* the limitation period had expired but before the period had expired, and were still under consideration by the insurer when the ostensible two-year period expired. Under these circumstances, we believe *Wiegand* and *Cochran* are not applicable to bar Wright's claim.

### III.

A primary objective of the no-fault law is to "'expedite the settling of all claims.'" *Wiegand*, 68 Haw. at 121, 706 P.2d at 19 (quoting House Joint Stand. Comm. Rep. No. 187, reprinted in 1973 House Journal, at 836). In *Wiegand*, the supreme court stated that "the no-fault law represents a socially enforced bargain where both parties give up some rights in exchange for other benefits. *The injured party relinquishes the right to sue for large amounts of general damages, and is saddled with a shorter limitations period in exchange for certainty and promptness of reparations for injuries.*" *Id.* (citation omitted and emphasis added).

Here, Wright made his claim eleven months before the limitations period ran. State Farm took over a year thereafter to determine whether to accept or reject the claim, allowing the ostensible statute of limitations on Wright's claim to run in the meantime. The promise to Wright of "certainty and promptness of reparations for injuries" which is a cornerstone of the no-fault law was rendered nugatory by this delay. An insurer could, inadvertently or otherwise, render Wright's claim untimely simply by postpon-

---

10. In *Cochran v. Pflueger Autos.*, 72 Haw. 460, 821 P.2d 934 (1991), the plaintiff-appellant (Cochran) sustained injuries in a one-car accident on July 12, 1982. Cochran had been the passenger in a vehicle. Her medical care was paid for by the State of Hawai'i Department of Human Services (DHS) until February 8, 1983. In November of 1986 Cochran asserted claims for public assistance benefits based on the *same injury*. Thereafter, Cochran brought a tort suit against Roland Rodrigues (Rodrigues), the driver of the vehicle in which she was injured, and his employer, Pflueger Automobiles, Inc. (Pflueger).

Cochran argued that her tort claim against Rodrigues and Pflueger was not time-barred by the two-year gap in medical payments because she had received DHS medical payments for the alleged aggravation of her original injury.

The supreme court found this position without merit. It held that the legislature had amended HRS § 294–36 to put public assistance recipients on the same ground as those receiving no-fault payments. The court pointed to legislative history which indicated that the intent of such an amendment was to "'provid[e] the same deadline for all individuals irrespective of the type of benefit they may be receiving.'" *Id.* at 463, 821 P.2d at 936 (quoting Hse. Stand. Comm. Rep. No. 693–84, in 1984 House Journal, at 1196). The court emphasized that unlike a no-fault carrier, the DHS will pay medical claims on behalf of their clients as long as needed.

The court concluded that Cochran's assertion that her claim can never be time-barred because there will never be a "last payment" from the DHS as long as she is eligible for public assistance would in effect elevate public assistance recipients to a preferred position. The court believed such an interpretation of the statute of limitations provision "would lead to an irrational result." *Id.* at 464, 821 P.2d at 936.

ing or delaying its determination. We believe the legislature did not intend this result. In construing a statute such as HRS § 294–36 we

> construe it in a manner consistent with its purpose and [a] rational, sensible and practicable interpretation [of a statute] is preferred to one which is unreasonable or impracticable, because [t]he legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction[,] and illogicality.

*Moss v. American Int'l Adjustment Co.*, 86 Hawai'i 59, 61, 947 P.2d 371, 373 (1997) (citations and internal quotation marks omitted).

■ Accordingly, we conclude that it is consistent with the purpose of the no-fault law to permit an insured to bring suit upon an unresolved claim after the two-year statute of limitations under HRS § 294–36(a)(2) has expired, provided the insured has made the claim for benefits before the running of the limitations period. To hold otherwise than we do would reward a delay in the disposition of an insured's claim, which effectively nullifies the insured's statutory right to arbitration of a disputed no-fault claim.

### IV.

■ In our view, then, the two-year period should be tolled by Wright's filing of a claim for no-fault benefits. We, therefore, apply the tolling rule to the instant case.

Because the last no-fault payment was made on December 5, 1991, the two-year period under HRS § 294–36(a)(2) would appear to expire on December 6, 1993.[11]

Under the facial language of the statute, then, a demand for arbitration had to be filed by December 6, 1993. However, as we have held, a claim made before the two-year period expired, that is, before December 6, 1993, would toll the running of the statute.

There is no apparent dispute that Wright notified State Farm of his renewed treatment on January 8, 1993. We may treat this date, thus, as the date of his claim and the date the statute was tolled.[12]

Three hundred ninety-nine days of the two-year statute had expired before the statute was tolled on January 8, 1993.[13] Thus, 332 days remained before the two-year period would end.

It is not clear when Wright received notice of State Farm's denial of his claim. As mentioned previously, the parties appear to agree that the date of denial was February 18, 1994.[14] Assuming that to be the operative date, the limitations period began to run again from February 18, 1994.[15]

Wright filed his petition on November 23, 1994, approximately 276 days from February 18, 1994, well within the 331 days remaining under the two-year statute of limitations. Under these circumstances, Wright's petition was timely filed.

### V.

For the foregoing reasons, we vacate the June 7, 1995 order and August 11, 1995 judgment and remand this case to the court with instructions that it enter an order requiring arbitration to proceed.

---

11. In counting the period of limitations, "the general rule [is] that the day on which the cause of action accrued is to be excluded." 51 Am. Jur.2d *Limitation of Actions* § 58, at 636 (1970). *But see Matsushita v. Container Home Supply, Inc.*, 6 Haw.App. 439, 445, 726 P.2d 273, 277 (1986) (holding that the two-year statute of limitations of HRS § 294–36(b) (repealed 1987 and recodified as HRS § 431:10C–315(b)) begins to run on the date of the last payment of no-fault benefits).

12. "Claim" has been defined as "[t]o demand as one's own or as one's right; to assert; to urge; to insist." *Black's Law Dictionary* 247 (6th

ed.1990). In light of the remedial purpose of the no-fault law we believe this definition applies.

13. In calculating that 399 days of the two-year statute of limitations had expired, we note that 1992 was a leap year and therefore consisted of 366 days.

14. *See supra* n. 5.

15. While not crucial to the instant case, we believe the limitations period should begin to run on the day the insured *receives* notice of the denial of benefits.