965 P.2d 1284

**STATE FARM MUTUAL AUTO INSURANCE COMPANY,**
Plaintiff-Appellee,

v.

**Jane MURATA, fka Jane Oishi,**
Defendant–Appellant.

No. 20410.

Supreme Court of Hawai'i.

Oct. 29, 1998.

On the briefs: Charles H. Brower of Brower & Brower, Honolulu, for defendant-appellant Jane Murata.

On the briefs: Richard B. Miller, David R. Harada–Stone, and Stacey M. Robinson (of McCorriston Miho Miller & Mukai), Honolulu, for plaintiff-appellee State Farm Mutual Automobile Insurance Company.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

LEVINSON, J.

The defendant-appellant Jane Murata (formerly known as Jane Oishi) appeals from the final judgment of the first circuit court, filed on February 20, 1997 and entered in

favor of the plaintiff-appellee State Farm Mutual Automobile Insurance Company (State Farm) and against Murata, further to the circuit court's order granting State Farm's motion for summary judgment, filed on December 17, 1996, on State Farm's complaint for a judgment declaring that the statute of limitations, as set forth in Hawai'i Revised Statutes (HRS) § 294–36 (1985),[1] governing Murata's claim for uninsured motorist (UM) insurance coverage, had expired. Murata urges on appeal that the circuit court erred because: (1) the record contained a genuine issue of material fact as to whether she had effectively lodged a timely claim for UM benefits by supplying State Farm with all the information requisite to a claim for UM benefits; (2) State Farm failed to "raise[ ] a statute of limitations defense" until well after it "formally opened a claim file" on Murata's UM claim; and (3) Murata kept State Farm apprised of her ongoing efforts to discover the identity of the third party tortfeasor responsible for her injuries. We agree with Murata's first point of error—that she had successfully raised a genuine issue of material fact as to whether, by her conduct, she had lodged a "claim" with State Farm for UM benefits that tolled the statute of limitations. Accordingly, we vacate that portion of the circuit court's order and judgment granting State Farm the declaratory relief for which it prayed in its complaint and remand the matter to the circuit court for further proceedings consistent with this opinion. In all other respects, we affirm the circuit court's order and judgment.[2]

## I. BACKGROUND

On July 31, 1987, Murata was involved in an automobile accident with a van, apparently owned by Hawaiian Holiday Macadamia Nut Company (Hawaiian Holiday), at the intersection of Vineyard Boulevard and the Pali Highway, located in the City and County of Honolulu.[3] At the time of the accident, Murata was the named insured under an automobile insurance policy issued by State Farm [hereinafter, "the policy"]. The policy afforded Murata, *inter alia,* no-fault and UM insurance coverage, and, in this regard, provided in relevant part:

## REPORTING A CLAIM—INSURED'S DUTIES

1. **Notice to Us of an Accident or Loss.**
   The **insured** must give us or one of our agents *written notice of the accident or* **loss** *as soon as reasonably possible.* The notice must give us:
   a. **your** *name;* and
   b. the names and addresses of all **persons** involved; and
   c. the hour, date, place and facts of the accident or **loss;** and
   d. the names and addresses of witnesses.

2. **Notice to us of Claim or Suit.**
   If a claim or suit is made *against* an **insured,** that **insured** must at once send

---

1. HRS § 294–36 provided in relevant part:
   **Statute of limitations.** (a) No suit shall be brought on any contract providing no-fault benefits or any contract providing optional additional coverage more than:
   (1) Two years from the date of the motor vehicle accident upon which the claim is based; or
   (2) Two years after the last payment of no-fault or optional additional benefits; or
   (3) Two years after the entry of a final order in arbitration; or
   (4) Two years after the entry of a final judgment in, or dismissal with prejudice of, a tort action arising out of a motor vehicle accident, where a cause of action for insurer bad faith arises out of the tort action; whichever is the last to occur.
   HRS § 294–36 was repealed effective July 1, 1988. *See* 1987 Haw. Sess. L. vol. 2 Act 347, §§ 1 and 4 at 1, 342. Nevertheless, inasmuch as it is undisputed that the auto accident giving rise to the instant case occurred on July 31, 1987, HRS § 294–36 is controlling. In any case, HRS § 294–36 was reenacted in substantially the same form as HRS § 431:10C–315. *See* 1987 Haw. Sess. L. vol. 2 Act 347, § 2, at 172.

2. Inasmuch as Murata has not expressly challenged the circuit court's order and judgment regarding her counterclaims on appeal, we will not disturb the circuit court's disposition with respect to them.

3. Although Murata was able to ascertain the ownership of the van, she was apparently unable to obtain the name and address of its driver, who allegedly asked that the police not be called to the scene.

us every demand, notice or claim made and every summons or legal process received.

3. **Other Duties Under the Physical Damage Coverages.**

When there is a *loss,* you or the owner of the property also shall:

a. make a prompt report to the police when the *loss* is the result of theft or larceny.

b. protect the damaged vehicle. We will pay any reasonable expense incurred to do it.

c. show us the damage, when we ask.

d. provide all records, receipts and invoices, or certified copies of them. We may make copies.

e. answer questions under oath when asked by anyone we name, as often as we reasonably ask, and sign copies of the answers.

4. ***Other Duties Under* No–Fault, *Uninsured Motor Vehicle,* Death, Dismemberment and Loss of Sight *Coverages.***

*The **person** making [a] claim also shall:*

a. *give us all the details about the death, injury, treatment and other information we need to determine the amount payable.*

b. be examined by physicians chosen and paid by us as often as we reasonably may require. A copy of the report will be sent to the ***person*** upon written request. If the ***person*** is dead or unable to act, his or her legal representative shall authorize us to obtain all medical reports and records.

c. *under the uninsured motor vehicle coverage:*

(1) *report a "hit-and-run" accident to the police within 24 hours and to us within 30 days.*

(2) *let us see the insured car the **person** occupied in the accident.*

d. *under the* no-fault *and uninsured motor vehicle coverages send us at once a copy of all suit papers if the party liable for the accident is sued for damages.*

(Bold face and italicized emphases in original and underscored emphases added.)

On August 10, 1987, Murata submitted a form to State Farm, captioned "Application for Benefits," in connection with the accident. The form, which bore State Farm's logo, requested, *inter alia,* (1) the applicant's name, date of birth, social security number, and address, (2) a "brief description of [the] accident and [the] vehicles involved," (3) the fact and description of any injury sustained, (4) the name and address of any treating physician, and (5) the amount of any wages lost to date as a result of the accident. Murata responded to all of the relevant queries. Although the form did *not* precisely identify the insurance "benefits" to which it pertained, it *did* advise, as a general matter, that *"the information provided will enable us [i.e.,* State Farm,] *to determine if you are entitled to benefits under the policyholder's insurance contract "* (emphases added).

State Farm made several no-fault payments to Murata in connection with the accident, the last of which was effected on February 15, 1989. Additionally, State Farm contacted Hawaiian Holiday's insurance carrier, Fireman's Fund Insurance Company (Fireman's Fund), in order to assert its right of subrogation regarding any recovery that Murata might obtain, to the extent of the total no-fault payments that it made to Murata. Fireman's Fund responded that their "records indicated that this accident was never reported to [its] office[,] nor [had its] insured [reported] any knowledge of this accident."

On November 8, 1988, State Farm also began corresponding with Murata's counsel, Charles Brower, regarding State Farm's subrogation rights and the status of Brower's search for the driver of the Hawaiian Holiday van. On April 19, 1991, Brower informed State Farm that he had filed suit against Hawaiian Holiday, which the record indicates was commenced on February 15, 1991. On January 19, 1993, Brower advised State Farm by letter that Murata's suit had been stayed pending bankruptcy proceedings involving Hawaiian Holiday. In the same letter, Brower asked that State Farm "confirm

that [it had] opened an Uninsured Motorist claim file, and notify [Brower] of [its] intentions regarding the claim." Although Brower and State Farm had corresponded extensively between 1988 and 1993, the January 19, 1993 letter contained Brower's first express reference to a claim for UM benefits.

State Farm then assigned a claim representative to Murata's UM claim, who began corresponding with Brower. On November 20, 1995, State Farm transmitted a letter to Murata, through Brower, which reserved State Farm's right to assert the defense that the statute of limitations had run on Murata's UM claim but did not formally deny the claim.[4]

On April 4, 1996, State Farm filed the instant action for a declaration that the statute of limitations had run with regard to Murata's UM claim. On May 6, 1996, Murata filed an answer to the complaint, as well as a counterclaim, seeking general and punitive damages for (1) unfair dealing and bad faith in failing to provide UM benefits, (2) breach of fiduciary duty, and (3) unfair and/or deceptive acts or practices. By order filed on August 15, 1996, the circuit court granted State Farm's motion to dismiss all of Murata's claims for relief set forth in her counterclaim, with the exception of the claim of breach of the implied covenant of good faith and fair dealing.

On August 7, 1996, State Farm filed a motion for summary judgment on its claim for declaratory relief, as well as on the remainder of Murata's counterclaim. As exhibits to its motion, State Farm attached, *inter alia,* copies of correspondence between Brower and its agents. Murata argued in opposition to the motion that she had, in the initial "Application for Benefits," performed all of the acts required of her by the policy to assert a "claim" for UM benefits. Accordingly, Murata urged that the statute of limitations had been tolled thereby. In this connection, she attached copies of the policy, the completed "Application for Benefits" form, and additional correspondence between the parties regarding her case to her memorandum in opposition.

Following a hearing conducted on December 3, 1996, the circuit court orally granted State Farm's motion for summary judgment with respect to its claim for a declaratory judgment, as well as the surviving portion of Murata's counterclaim. The circuit court's written order to that effect was filed on December 17, 1996, and final judgment in favor of State Farm and against Murata was entered on February 20, 1997. Murata appealed.

## II. *STANDARD OF REVIEW*

We review [a] circuit court's award of summary judgment *de novo* under the same standard applied by the circuit court. *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85, 104, 839 P.2d 10, 22, *reconsideration denied,* 74 Haw. 650, 843 P.2d 144 (1992) (citation omitted). As we have often articulated:

> [s]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

*Id.* (citations and internal quotation marks omitted); *see* Hawai'i Rules of Civil Procedure (HRCP) Rule 56(c) (1990). "A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Hulsman v. Hemmeter Dev. Corp.,* 65 Haw. 58, 61, 647 P.2d 713, 716 (1982) (citations omitted).

*Konno v. County of Hawai'i,* 85 Hawai'i 61, 70, 937 P.2d 397, 406 (1997) (quoting *Dunlea v. Dappen,* 83 Hawai'i 28, 36, 924 P.2d 196, 204 (1996)) (brackets in original). "The evidence must be viewed in the light most favorable to the non-moving party." *State ex rel. Bronster v. Yoshina,* 84 Ha-

---

4. The record in this case fails to reveal that State Farm ever formally denied Murata's claim for UM benefits.

wai'i 179, 186, 932 P.2d 316, 323 (1997) (citing *Maguire v. Hilton Hotels Corp.*, 79 Hawai'i 110, 112, 899 P.2d 393, 395 (1995)). In other words, "we must view all of the evidence and the inferences drawn therefrom in the light most favorable to [the party opposing the motion]." *Maguire,* 79 Hawai'i at 112, 899 P.2d at 395 (citation omitted).

*Estate of Doe v. Paul Revere Ins. Group,* 86 Hawai'i 262, 269–70, 948 P.2d 1103, 1110–11 (1997) (quoting *Morinoue v. Roy,* 86 Hawai'i 76, 80, 947 P.2d 944, 948 (1997)) (brackets in original).

### III. *DISCUSSION*

■ In defense of the circuit court's ruling on its motion for summary judgment, State Farm correctly notes that, *by its terms,* HRS § 294–36(a), *see supra* note 1, governs the insurance contract for "optional additional coverage" at issue in the present case. *See Estate of Doe,* 86 Hawai'i at 271, 948 P.2d at 1112 (" '[Insurance] policies are governed by statutory requirements in force and effect at the time such policies are written.... Such provisions are read into each policy issued thereunder[ ] and become a part of the contract with full binding effect upon each party.' " (Some brackets in original and some added.)) (quoting *AIG Hawai'i Ins. Co. v. Estate of Caraang,* 74 Haw. 620, 633, 851 P.2d 321, 328 (1993) (citations and internal quotation marks omitted)). UM benefits are included within the meaning of "optional additional coverage" for purposes of HRS § 294–36. *Cf. Honbo v. Hawaiian Ins. & Guar. Co.,* 86 Hawai'i 373, 375–76, 949 P.2d 213, 215–16 (App.1997) (holding that "for the purpose of HRS § 294–36(a)," underinsured motorist "benefits constitute 'optional additional benefits' "), *cert. denied,* 86 Hawai'i 373, 949 P.2d 213 (1998); *Higa v. Lino,* 82 Hawai'i 535, 538–39, 923 P.2d 952, 955–56 (App.) (determining that UM benefits constitute "optional additional benefits" for purposes of HRS § 294–36(b)(2)), *cert. denied,* 83 Hawai'i 204, 925 P.2d 374 (1996).

As noted above, HRS § 294–36(a) provides that the latest of four alternative starting points for the running of the two-year statute of limitations will apply to suits "brought on

any ... [insurance] contract providing optional additional coverage." Those starting points are, respectively, two years after the dates of: (1) "the motor vehicle accident upon which the claim is based"; (2) "the last payment of no-fault or optional additional benefits"; (3) "the entry of a final order in arbitration"; or (4) "the entry of a final judgment in, or dismissal with prejudice of, a tort action arising out of a motor vehicle accident, where a cause of action for insurer bad faith arises out of the tort action."

■ HRS § 294–36(a)(3) is clearly inapposite to this case, inasmuch as there is no record of arbitration. HRS § 294–36(a)(4) is likewise inapposite, notwithstanding that Murata filed a counterclaim against State Farm alleging bad faith, because the "cause of action for insurer bad faith" that must "arise out of the tort action" pursuant to subsection (a)(4) is limited to "third-party bad faith claims," such as claims "surrounding an insurer's duty to defend, to settle, or investigate a third-party['s] claim" against the insured. *See Honbo,* 86 Hawai'i at 376–82, 949 P.2d at 216–22. Murata's bad faith claim against State Farm alleged only that State Farm acted in bad faith in failing to provide *her* with UM benefits. No third parties are directly implicated, and, as indicated, "by its plain and unambiguous terms, HRS § 294–36(a)(4) does not apply to first-party insurer bad faith claims." *Id.* at 378, 949 P.2d at 218 (footnote omitted).

Thus, State Farm argues that, pursuant to HRS § 294–36(a)(2), the statute of limitations on Murata's UM claim ran on February 14, 1991—two years after February 15, 1989, the date of its last payment of no-fault benefits to Murata. However, State Farm's argument begs the central question raised by Murata, to wit, whether the applicable statute of limitations was *tolled* in this case.

In *Wright v. State Farm Mutual Automobile Insurance Company,* 86 Hawai'i 357, 949 P.2d 197 (App.1997), the Intermediate Court of Appeals (ICA) addressed the question in the context of a demand for arbitration of the amount of no-fault benefits due and owing the insured. Wright was injured in an automobile accident and promptly reported his injury to his insurer, which, as it happens,

was State Farm. *Wright,* 86 Hawai'i at 359, 949 P.2d at 199. State Farm made several no-fault benefit payments to Wright, the last of which occurred on December 5, 1991. *Id.* One year later, Wright "had an exacerbation of [his] cervical injury" and, therefore, obtained further treatment. *Id.* He submitted his medical bills related to his additional treatment to State Farm. *Id.* On February 17, 1994, over a year after he had first contacted State Farm about his exacerbation, State Farm denied his claim for additional no-fault benefits. *Id.* at 359–60, 949 P.2d at 199–200. In October 1994, Wright demanded arbitration. *Id.* at 360, 949 P.2d at 200. State Farm successfully moved to dismiss Wright's demand on the basis that the statute of limitations had run on his claim, pursuant to HRS § 294–36(a), and judgment was subsequently entered in State Farm's favor. *Id.*

On appeal, Wright argued that the statute of limitations for commencing suit (or arbitration proceedings, *see Wiegand v. Allstate Insurance Company,* 68 Haw. 117, 706 P.2d 16 (1985) (holding that the statute of limitations provided in HRS § 294–36 for the bringing of "suit" applies to arbitration proceedings as well)), as set forth in HRS § 294–36(a), had been tolled, by virtue of his timely proffer to State Farm of his claim for benefits, through the time of State Farm's denial of his claim. The ICA agreed, holding that "an insured [may] bring suit upon an unresolved claim after the two-year statute of limitations under HRS §` 294–36(a)(2) has expired, provided [that] the insured has made the claim for benefits before the running of the limitations period." *Id.* at 362, 949 P.2d at 202. The *Wright* court reasoned that the legislature could not have intended

to allow an insurer "inadvertently or otherwise, [to] render [an insured's] claim untimely simply by postponing or delaying its determination. . . . To hold otherwise than we do would reward a delay in the disposition of an insured's claim, which effectively nullifies the insured's right to arbitration." *Wright,* 86 Hawai'i at 361–62, 949 P.2d at 201–02.

■ Although *Wright* involved an allegedly untimely request for arbitration regarding no-fault benefits, rather than an allegedly untimely claim for UM benefits, its reasoning applies with equal force to the instant case. The legislature could not have intended to allow insurers to extinguish an insured's right to UM benefits merely by delaying its response to the insured's claim until the statute of limitations has run. We therefore hold that a claim for UM benefits, proffered within the period prescribed by the governing statute of limitations as set forth in HRS § 249–36(a), will toll the running of the statute until such time as the claim is denied.

In this case, no evidence was adduced in the circuit court that State Farm ever formally denied Murata's claim.[5] Thus, if Murata proffered a "claim" to State Farm for UM benefits within the statutory period, HRS § 294–36(a) would not operate as a bar to her recovery.

HRS chapter 294 does not define the term "claim" within the context of requesting UM benefits. Accordingly, the determination of what constitutes such a "claim" is governed by the terms of the insurance contract between the parties. State Farm observes that Murata did not expressly articulate an *intent* to claim UM benefits until it appeared in Brower's January 19, 1993 letter, more than four years after State Farm had made its

5. The issue of procrastinated denial of an insured's claim is the crucial factor distinguishing both the instant case and *Wright* from *Doherty v. Hartford Insurance Group,* 58 Haw. 570, 574 P.2d 132 (1978), which State Farm cites for the proposition that, "in the absence of evidence that an insurer has lulled the insured into believing that his or her claim will be paid without bringing suit or making a demand for arbitration, the applicable limitations period will be enforced against the insured." In *Doherty,* the insured argued that his yacht insurance carrier should have been estopped from asserting a contractual time limitation defense because the carrier had

contributed to his delay in bringing suit regarding damages to his yacht by, *inter alia,* continuing to negotiate a settlement of the issue with him beyond the limitation period. On the record before it, this court ruled that the carrier had made no representations to the insured that could reasonably have led him to believe that his claim would be approved, but, rather, "ha[d] *consistently denied coverage* under the . . . insurance policy." *Doherty,* 58 Haw. at 572–73, 574 P.2d at 134 (emphasis added). Accordingly, the *Doherty* court rejected the insured's claim of coverage. No such "consistent denial" of coverage was established in the instant case.

last no-fault payment on Murata's behalf—on February 15, 1989. However, the policy is silent as to whether and how Murata was to notify State Farm of her intent to "claim" UM benefits, as opposed to no-fault benefits or benefits resulting from physical damage, death, dismemberment, or loss of sight.

As noted *supra* in section I, the only portion of the policy that mentions reporting requirements is generically captioned "Reporting A Claim—Insured's Duties." Inasmuch as that section contains subsections pertaining, one way or another, to each of the types of benefits covered, it appears, as a whole, to govern reporting for all of the types of benefits covered by the policy. Subsection one of the "Reporting A Claim" portion of the policy merely directs that Murata must (1) inform State Farm of "the accident or loss as soon as reasonably possible," (2) provide personal identification information, (3) provide the names and addresses of all persons involved, including witnesses, and (4) describe the "hour, date, place and facts of the accident or loss." Subsection two requires Murata to notify State Farm of any suit filed against her. Subsection three does not apply to Murata, inasmuch as it is concerned exclusively with "Other Duties Under the Physical Damage Coverages." Subsection four, which expressly applies, *inter alia,* to UM benefits, adds the requirements that Murata (1) provide details of her injuries and medical treatment related to the accident, (2) make herself available for examination by physicians selected by State Farm, (3) report any "hit-and-run" accident to the police within twenty-four hours and to State Farm within thirty days, (4) allow State Farm to inspect her automobile, and (5) send State Farm a copy of "all suit papers if the party liable for the accident is sued for damages." Finally, subsection five requires Murata to cooperate with State Farm in "(a) making settlements, (b) securing and giving evidence, (c) attending and getting witnesses to attend[ ] hearings and trials," and prohibits Murata, except at her own cost, from (a) "mak[ing] any payment or assum[ing] any obligation to others; or (b) incur[ring] any expense, other than for first aid to others."

Nowhere in the "Reporting A Claim" section of the policy is there any indication that Murata was required expressly to elect or enumerate the class or classes of benefits she was "claiming" as a result of her accident. Moreover, as we have noted, State Farm's own reporting form is generically captioned "Application for Benefits" and not only fails to require any such election or enumeration, but purports to reserve unto State Farm the prerogative "to determine if [the claimant is] entitled to benefits under the policyholder's insurance contract." While it may be that State Farm might have legitimately contracted for an election requirement through an *express* provision in the policy (although we need not and do not express an opinion in that regard), we are loath to hold that such a duty was *implied,* especially where, as here, no evidence was adduced that such a requirement was ever contemplated by the parties. On the contrary,

> "[b]ecause insurance policies are contracts of adhesion and are premised on standard forms prepared by the insurer's attorneys, we have long subscribed to the principle that they must be construed liberally in favor of the insured and [any] ambiguities [must be] resolved against the insurer.'" *Sturla, Inc. v. Fireman's Fund Ins. Co.,* 67 Haw. 203, 209, 684 P.2d 960, 964 (1984) (citations and internal quotation marks omitted) (cited with approval in [*State Farm Mut. Auto. Ins. Co. v.] Fermahin,* 73 Haw. 552,] 556, 836 P.2d [1074,] 1077 [(1992)]. "Put another way, the rule is that policies are to be construed in accord with the reasonable expectations of a layperson." *Id.*

*Estate of Doe,* 86 Hawai'i at 271, 948 P.2d at 1112 (some brackets in original and some added). A layperson reading the policy language described above would reasonably expect that State Farm had assumed the task of sorting out what class of benefits applied to each particular automobile accident, after being informed of the relevant facts by the insured. Accordingly, we hold that the policy did not require an election or enumeration of the benefits being "claimed" thereunder.

Murata appears substantially to have complied with the "Reporting A Claim" section of the policy, having apprised State Farm, *inter alia,* of her name, address, the time, date, location, and circumstances of the accident, and her account of her injuries and medical treatment resulting from the accident. Nevertheless, on the record in its present form, we cannot determine as a matter of law whether Murata fully complied with her duties under that section. As the very least, however, viewing the evidence in the light most favorable to Murata, we hold that Murata has raised a genuine issue of material fact as to the issue of her compliance with the policy's "reporting" requirements. Moreover, as we have noted, the record appears to be devoid of any evidence that State Farm ever expressly *denied* liability for UM coverage. Accordingly, we hold that the circuit court wrongly granted summary judgment in State Farm's favor.

## IV. CONCLUSION

Based on the foregoing analysis, we vacate that portion of the circuit court's order and judgment granting State Farm the declaratory relief for which it prayed in its complaint and remand the matter for further proceedings consistent with this opinion. In all other respects, we affirm the circuit court's order and judgment.